# Exhibit D

1  MARC M. SELTZER (54534)
   mseltzer@susmangodfrey.com
2  STEVEN SKLAVER (237612)
   ssklaver@susmangodfrey.com
3  KALPANA SRINIVASAN (237460)
   ksrinivasan@susmangodfrey.com
4  MICHAEL GERVAIS (330731)
   mgervais@susmangodfrey.com
5  SUSMAN GODFREY L.L.P.
   1900 Avenue of the Stars, Suite 1400
6  Los Angeles, CA  90067
   Phone: (310) 789-3100
7
   *Attorneys for Plaintiffs*
8
9                    UNITED STATES DISTRICT COURT
10                  NORTHERN DISTRICT OF CALIFORNIA
11

12  SARA DAY BREWER and THIEN NGO, on       Case No. 5:20-cv-04823
    Behalf of Themselves and All Others Similarly
13  Situated,                                CLASS ACTION COMPLAINT FOR
                                             VIOLATIONS OF:
14              Plaintiffs,
15                                           1. **SHERMAN ACT §§ 1, 2,**
        vs.
16                                           2. **CLAYTON ACT §7,**
    CELESTRON ACQUISITION, LLC,
17  NANTONG SCHMIDT OPTO-ELECTRICAL          3. **STATE ANTITRUST LAWS,**
    TECHNOLOGY CO. LTD.,
18  NINGBO SUNNY ELECTRONIC CO. LTD.,        4. **STATE CONSUMER**
    OLIVON MANUFACTURING CO., LTD.,
19  OLIVON USA, LLC,                            **PROTECTION LAWS, and**
    SKY-WATCHER CANADA,
20  SKY-WATCHER USA,                         5. **UNJUST ENRICHMENT**
    SUZHOU SYNTA OPTICAL TECHNOLOGY
21  CO. LTD.,                                **DEMAND FOR JURY TRIAL**
    SW TECHNOLOGY CORP.,
22  SYNTA CANADA INTERNATIONAL
    ENTERPRISES LTD., and
23  SYNTA TECHNOLOGY CORP. OF TAIWAN,
24
                Defendants.
25
26
27
28
                                                    Case No. 5:20-cv-04823

COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

JURISDICTION AND VENUE ......................................................................................... 2

I.   PARTIES ................................................................................................................ 3

    A.   Plaintiffs ...................................................................................................... 3

    B.   Defendants .................................................................................................... 4

        1.   The Synta Defendants ...................................................................... 4

        2.   Defendant Sunny .............................................................................. 6

    C.   Agents and Co-Conspirators ........................................................................ 6

        1.   The Synta Co-Conspirators .............................................................. 6

        2.   The Sunny Co-Conspirators ............................................................. 7

        3.   Defendants Corporate Families Acted as Single Enterprises, and Defendant Parent Companies Exercised Substantial Control over Their U.S. Affiliates...... 8

II.   DEFENDANTS' WRONGFUL COURSE OF CONDUCT ............................................ 10

    A.   Consumer Telescopes.................................................................................. 10

    B.   The Telescope Market ................................................................................. 11

        1.   The Manufacturing Market ............................................................ 11

        2.   The Distribution Market.................................................................. 11

    C.   Defendants' Anticompetitive Conduct........................................................ 12

    D.   Regulator Concerns in the Consumer Telescope Market............................. 13

    E.   Defendants and Their Co-Conspirators Colluded on Sunny's Acquisition of Meade........................................................................................................... 14

    F.   Defendants Colluded to Sabotage a Competitor ......................................... 17

    G.   Defendants' Anticompetitive Conduct Involved Agreements to Fix Prices and Allocate the Telescope Markets .......................................................... 18

    H.   Defendants' Conduct Has Caused Antitrust Injury to Plaintiffs and Class Members....................................................................................................... 20

    I.   The Consumer Telescope Market is Vulnerable to The Conduct Alleged ............. 23

        1.   High Barriers to Entry in the Relevant Markets................................. 23

        2.   The Relevant Markets are Highly Concentrated................................ 24

        3.   Demand is Inelastic for Consumer Telescopes ................................ 24

III.   CLASS ACTION ALLEGATIONS ................................................................................ 25

    A.   California Law Should Apply to the Nationwide Indirect Purchaser States' Damages Class ............................................................................................ 26

        1.   Defendants and Their Co-Conspirators Located in California and Coordinated the Conspiracy from California........................................... 26

        2.   Individuals Engaged in the Conspiracy in California ....................... 27

3. Orion, a Target of the Conspiracy, is Located in California ............................. 27

4. Defendants and Their Co-Conspirators Targeted California Residents............ 27

B. In the Alternative, Plaintiffs Will Seek to Certify State Damages Classes.............. 27

IV. THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFFS' CLAIMS.......... 34

A. The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not
and Could Not Discover Their Claims Until Recently ............................................. 34

B. Fraudulent Concealment Tolled the Statute of Limitations ..................................... 35

V. CLAIMS FOR RELIEF ........................................................................................ 37

First Claim for Relief.................................................................................................... 37

Second Claim for Relief................................................................................................ 38

Third Claim for Relief................................................................................................... 40

Fourth Claim for Relief ................................................................................................. 42

Fifth Claim for Relief.................................................................................................... 43

Sixth Claim for Relief ................................................................................................... 63

Seventh Claim for Relief............................................................................................... 80

PRAYER FOR RELIEF............................................................................................................ 81

DEMAND FOR JURY TRIAL................................................................................................. 82

COMPLAINT

Plaintiffs Sara Day Brewer and Thien Ngo, by and through their attorneys, allege on behalf of themselves and all those similarly situated, as follows:

**INTRODUCTION**

1.      This action arises out of a longstanding conspiracy by the defendants to unlawfully fix the prices, allocate the markets, and gain an unlawful monopoly over the sale of telescopes sold to consumers.  As a result of defendants' alleged conduct, American consumers have collectively overpaid hundreds of millions of dollars in inflated prices for telescopes and telescope accessories.

2.      Plaintiffs are amateur astronomists who indirectly purchased telescopes from defendants or their co-conspirators during the Class Period.

3.      Defendants Celestron Acquisition LLC, Nantong Schmidt Opto-Electrical Technology Co. Ltd., Olivon Manufacturing Co. Ltd., Olivon USA LLC, Sky-Watcher Canada, Sky-Watcher USA, Suzhou Synta Optical Technology Co. Ltd., SW Technology Corp., Synta Canada International Enterprises Ltd., Synta Technology Corp. of Taiwan (collectively, the "Synta Defendants") and Ningbo Sunny Electronic Co. ("Sunny") and their co-conspirators unlawfully engaged in a conspiracy to monopolize, to allocate the market, and fix prices in the consumer telescope market.

4.      In November 2016, Orion Technologies, Inc. ("Orion")—a competitor distributor of telescopes that imports telescopes from the largest telescope manufacturers—brought a lawsuit against Sunny for conspiring to "divide the market, fix prices, [and] throttle competition" in violation of state and federal antitrust laws. See *Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd.*, No. 5:16-cv-006370 (N.D. Cal) (the "*Orion* Litigation").

5.      In December 2019, following a multi-week trial, the jury returned a verdict in favor of Orion, finding that Sunny had engaged in a conspiracy to fix the prices for, and allocate the market of, consumer telescopes and accessories and to dominate the U.S. consumer telescope market in violation of the Sherman Act and the Clayton Act. The Court under 15 U.S.C. §15(a) trebled the $16.6 million in damages and granted post-judgment interest for a partial final judgment of $50.4 million.

6.      The anticompetitive and unlawful conduct the jury found took place in the *Orion* Litigation and alleged herein caused the plaintiffs and the Class to pay supracompetitive prices for consumer telescopes during the period from the date of the Synta acquisition of Celestron through at least the date when notice is given to the Class  ("Class Period").

7.      To remedy the injury caused and threatened to be caused by the defendants' unlawful conduct, plaintiffs seek compensatory damages to be trebled in accordance with the antitrust laws, injunctive relief, and costs of suit, including attorneys' fees.

## JURISDICTION AND VENUE

8.      Pursuant to Section 16 of the Clayton Act (15 U.S.C. §26), plaintiffs seek equitable and injunctive relief against the defendants for violations of Section 1 of the Sherman Act (15 U.S.C. §1). Plaintiffs also seek damages pursuant to state antitrust, consumer protection, and unjust enrichment laws, and seek to obtain restitution, recover damages, and secure other relief against the defendants for violations of those state laws. Plaintiffs also seek attorneys' fees, costs, and other expenses under federal and state law.

9.      The Court has subject matter jurisdiction of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. §26), Section 1 of the Sherman Act (15 U.S.C. § 1), and 28 U.S.C. §§ 1331 and 1337. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(d) and 1367, given that (1) this is a class action in which the matter or controversy exceeds $5 million, exclusive of interests and costs, and in which some Class members are citizens of a state different from the defendants; and (2) plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the U.S. Constitution.

10.     The Court has personal jurisdiction over the defendants because they, either directly or through their subsidiaries (1) transacted business in the United States, including in this District; (2) directly sold or marketed telescopes throughout the United States, including in this District; (c) had substantial contacts within the United States, including in this District; and (d) were engaged in an unlawful conspiracy to fix prices and to monopolize that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the property of persons and entities that reside in or do business in the United States, including in this District. In addition,

the defendants have purposefully availed themselves of the benefits of federal and state laws. The Court has further jurisdiction over defendants Celestron and Sky-Watcher USA, which are headquartered in California, and their co-conspirator Meade Instruments Corp. which is headquartered in California.

11.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391 and Section 12 of the Clayton Act (15 U.S.C. § 22), because a "substantial part of the events or omissions" that give rise to the asserted claims occurred in this District and took place in or affected interstate trade and commerce in this District. Moreover, defendants reside, are licensed to do business in, are doing business in, or have agents that are found in or transact business in this District.

12.    The defendants engaged in conduct that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects on interstate commerce within the United States. Defendants' and their co-conspirators' conduct targeted the U.S. consumer telescope market and were intended to, and did have, a substantial effect on interstate commerce. Defendants and their co-conspirators' conduct substantially affected commerce throughout the United States, causing injury to plaintiffs and Class members. The defendants and their co-conspirators directly and through their agents, engaged in activities affecting residents in all of the states, to fix, raise, maintain, and/or stabilize telescope prices and allocate the U.S. consumer telescope market.

13.    The defendants' conspiracy and wrongdoing adversely affected U.S. telescope consumers.

I.    **PARTIES**

A.    **Plaintiffs**

14.    Plaintiff Sara Day Brewer is an amateur astronomist who purchased at least one telescope indirectly from defendants or their co-conspirators while residing in Michigan.

15.    Plaintiff Thien Ngo is an amateur astronomist who purchased at least one telescope indirectly from defendants or their co-conspirators while residing in California.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B.     **Defendants**

1.     **The Synta Defendants**

16.     Defendant Synta Technology Corporation of Taiwan ("Synta Technology") is headquartered in Taiwan. Synta Technology, with its subsidiaries and affiliates, manufactured, marketed and/or sold telescopes that were sold and purchased throughout the U.S. – including in this District – during the Class Period. Its address in Taiwan is No. 89 Lane 4 Chi-An W. Road Lung-Tan Taoyuan Taiwan R.O.C. Synta Technology is a member of defendants' anticompetitive conspiracy.

17.     Defendant SW Technology Corporation ("SW Technology") is a Delaware corporation with its principal place of business in California. Upon information and belief, it is a wholly owned and/or controlled subsidiary of defendant Synta Technology. SW Technology manufactured, marketed and/or sold telescopes that were sold and purchased throughout the U.S. – including in this District – during the Class Period. Its California address is 2835 Columbia Street, Torrance, California. On information and belief, SW Technology acquired Celestron as a wholly-owned subsidiary in 2005 and continues to operate as a holding company.

18.     Defendant Suzhou Synta Optical Technology Co., Ltd. ("Suzhou Synta") is a telescope manufacturing company located in Suzhou, China with its principal place of business at No. 65, Yushan Road, New District, 215011, Jiangsu, China. Suzhou Synta has manufactured, marketed and/or sold telescopes that were sold and purchased throughout the U.S. – including in this District – during the Class Period. Suzhou Synta is the primary manufacturing subsidiary of defendant Synta Technology.

19.     Defendant Nantong Schmidt Opto-Electrical Technology Co. Ltd. ("Nantong Synta") is a telescope manufacturing company located at No. 399 West Zhongshan Rd., Rugao City Jiangsu, China. Nantong Synta manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the U.S.—including in this District—during the Class Period.

20.     Defendant Celestron Acquisition, LLC ("Celestron") is a Delaware corporation that maintains its headquarters at 2835 Columbia Street, Torrance, California 90503. Celestron is the largest importer and seller of telescopes in the U.S. and abroad, including in this District, during

the Class Period. SW Technology acquired Celestron as a wholly owned subsidiary in 2005. Celestron issued a press release about the acquisition in which it stated that SW Technology is "an affiliate of Synta Technology Corporation."

21.    Defendant Synta Canada Int'l Enterprises Ltd. ("Synta Canada") is a Canadian company with its principal place of business at 4035 Williams Road, Richmond, BC V7E 1J7, Canada. Synta Canada is a 20 percent owner of defendant Suzhou Synta. Synta Canada manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the U.S.—including in this District—during the Class Period.

22.    Defendant Olivon Manufacturing Co. Ltd. ("Olivon Canada") is a Canadian company with its principal place of business at 11880 Hammersmith Way, Richmond BC V7A 5C8, Canada. Defendant Olivon Canada manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the U.S.—including in this District—during the Class Period.

23.    Defendant Olivon USA, LLC ("Olivon USA") is a Nevada corporation with its principal place of business at 701 S Carson Street, Suite 200, Carson City, Nevada 89701. Olivon USA manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the U.S.—including in this District—during the Class Period.

24.    Defendant Sky-Watcher Canada is a Canadian corporation with its principal place of business at 11880 Hammersmith Way, Richmond, BC V7A 5C8, Canada. Defendant Sky-Watcher Canada is a wholly owned subsidiary of defendant Synta Technology. Sky-Watcher Canada manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the U.S.—including in this District—during the Class Period.

25.    Defendant Sky-Watcher USA is an American corporation that maintains its headquarters at 475 Alaska Avenue, Torrance, California 90503. Sky-Watcher USA manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the U.S.—including in this District—during the Class Period.

26.    Upon information and belief, SW Technology, Synta Canada, Olivon Canada, Olivon USA, Celestron, Sky-Watcher Canada, and Sky-Watcher USA are part of a network of Synta entities directed and indirectly owned and controlled by Synta Technology. Upon

information and belief, there is no reasonable or legitimate business purpose for the proliferation of Synta-related holding companies and shell corporations. Upon information and belief, they are designed to hide assets, obscure ownership, and divert assets and shift capital to further their conspiracy.

### 2.  Defendant Sunny

27.     Defendant Ningbo Sunny Electronic Co., Ltd. ("Sunny") is a Chinese company with its principal place of business at 199 An Shan Lu, Yuyao, Ningbo, Zheijiang, China. During the Class Period, Ningbo Sunny, through defendant Celestron and others—manufactured, marketed, and/or sold telescopes that were sold and purchased throughout the U.S.—including in this District—during the Class Period.

### C.  Agents and Co-Conspirators

### 1.  The Synta Co-Conspirators

28.     Good Advance Industries Limited ("Good Advance") is a Taiwanese company with its principal place of business at No. 89 Lane 4 Chia-An W. Road Lung-Tan Taoyuan Taiwan R.O.C. Good Advance has shipped telescopes into this District and acted as a central hub for price-fixing between the Synta Entities and their co-conspirators.

29.     Dar Tson ("David") Shen owns and/or controls the Synta Defendants and Synta co-conspirators. On information and belief, during the Class Period, Chairman Shen and his family, including Jean Shen and Sylvia Shen, owned and/or controlled the Synta Defendants and Synta co-conspirators. Chairman Shen is one of the primary architects of defendants' anticompetitive conspiracy. He regularly travels to the United States—including to this District—for meetings and other activities in furtherance of this conspiracy. Despite Chairman Shen being a founder of Synta and owning and/or controlling Synta, from 2001 to 2005, he was concurrently an officer of Sunny, Synta's direct competitor. Indeed, Chairman Shen was a part-owner of Sunny, with a 26 percent ownership stake until he transferred his ownership stake to his sister-in-law, Dong Yun Zue, who continues to hold that interest.

30.     Co-conspirator Jean Shen is Chairman Shen's sister. Chairman Shen, through Jean Shen, exercises control over defendants Olivon Manufacturing and Olivon USA. Ms. Shen actively

participated in the conspiracy, including by representing to telescope distributors that Synta's competitor, Sunny, was one of "my family's companies."

31.     Co-conspirator Sylvia Shen is Chairman Shen's sister. Chairman Shen, through Sylvia Shen, exercises control over defendant Celestron and other Synta affiliates. Sylvia Shen is a member of Celestron's executive committee and she is the CEO, CFO, and Secretary of defendant SW Technology. Ms. Shen participated in, planned, and carried out the conspiracy alleged herein.

32.     Co-conspirator Corey Lee is the CEO of defendant Celestron, and lives in California. Mr. Lee participated in, planned, and carried out the conspiracy alleged herein.

33.     Co-conspirator Laurence Huen is a board member of defendant Celestron and an advisor to Chairman Shen. Mr. Huen acted as a conduit of information exchanged between Synta and Sunny, and also assisted co-conspirator Lupica. Mr. Huen participated, planned, and carried out the conspiracy alleged herein.

34.     Co-conspirator Joseph Lupica is the former CEO of defendant Celestron. As a result of the conspiracy alleged herein, following his tenure as CEO of Celestron, Mr. Lupica became the CEO of Meade, a competitor of Celestron. As CEO of Meade, Mr. Lupica replaced Meade's management with officers from Celestron. Mr. Lupica participated in, planned, and carried out the conspiracy alleged herein.

35.     Co-conspirator Dave Anderson is a former CEO of defendant Celestron. Mr. Anderson participated in, planned, and carried out the conspiracy alleged herein.

### 2.    The Sunny Co-Conspirators

36.     Co-conspirator Sunny Optical Technology Co. Ltd. ("Sunny Optical") is a Chinese corporation with its principal place of business at 27-29 Shunke Road, Yuyao, Zhejiang, China. Sunny Optical manufactured, marketed, and/or sold that telescopes that were sold throughout the U.S.—including in this District—during the Class Period. Sunny Optical was controlled and/or directed by defendant Sunny.

37.     Co-conspirator Meade Instruments Corporation ("Meade") is a Delaware corporation with its principal place of business at 27 Hubble, Irvine, California 92618. Meade manufactured, marketed, and/or sold telescopes that were sold in the U.S.—including in this

District—during the Class Period. As a wholly-owned subsidiary of defendant Sunny, Meade's activities in the U.S. were under the control and direction of Sunny. Meade recently filed for bankruptcy. See Case No. 8:19-bk-14714-CB (C.D. Cal.).

38.     Co-conspirator Sunny Optics Inc. ("Sunny Optics") is a Delaware corporation that was formed for the purpose of merging with Meade. Sunny Optics is a subsidiary of defendant Sunny.

39.     Co-conspirator Wenjun ("Peter") Ni is the founder, owner, and CEO of defendant Sunny. Mr. Ni directly or indirectly owns and/or controls Sunny and the Sunny entities—Sunny Optical, Sunny Optics, and Meade—during the Class Period. Mr. Ni coordinated, led, entered, and/or authorized collusive agreements between defendants and the Synta co-conspirators. Mr. Ni helped fund the Meade acquisition and executed the acquisition agreement.

40.     Co-conspirator Wang Wenjian—Mr. Ni's uncle—is the director and controlling shareholder of Sunny Optical.

> **3.     Defendants Corporate Families Acted as Single Enterprises, and Defendant Parent Companies Exercised Substantial Control over Their U.S. Affiliates**

41.     The defendants and their co-conspirators shared executives to facilitate the conspiracy alleged herein. Mr. Shen, for example, the founder of Synta Technology, served as an officer of its competitor, Sunny, from 2001 to 2005. Mr. Shen was a 26 percent part-owner of Synta until 2005, at which time he transferred his shares to his sister-in-law Dong Yun Xue who continues to hold his interest. Likewise, as part of the alleged conspiracy, Mr. Lupica transitioned from CEO of Celestron to CEO of Meade, its direct competitor.

42.     Each defendant acted as the principal, agent, and/or joint venture of, and on behalf of the other defendants and their co-conspirators, regarding the acts, violations, and common course of conduct alleged herein. Each defendant acted with knowledge of the conspiracy and worked with each other and unknown third parties to accomplish their objectives.

43.     Each defendant headquartered outside the U.S. relied upon its domestic agents, employees, and affiliates, and its co-conspirators to help implement and conceal the anticompetitive activities, including the conspiracy to fix prices, divide and dominate the market.

44.     The agency relationships formed among the defendants with respect to the act, violations, and common course of conduct alleged herein were consensually formed. Defendants' agents acted in the U.S. and abroad within the scope of their agency relationship with their own principals, under the control and authority of their principals. Thus, the defendant principals are liable for the acts of their agents. Likewise, the defendant agents are liable for the acts of their principals conducted by the agents within the scope of their authority.

45.     Defendants, and each of their co-conspirators, conspired to commit the antitrust violations set forth in this complaint, aided and abetted one another, and acted in concert with one another. Defendants conspired with one another and their co-conspirators to engage in the acts and omissions alleged herein.

46.     Defendants and each of their co-conspirators manufactured, marketed, and/or sold telescopes around the world, including in the U.S. To achieve their anticompetitive aims, defendants and their co-conspirators established pricing and allocated the market in which they compete. In most cases, the U.S. subsidiaries carry out the distribution and/or sales of telescopes to customers in the U.S. after obtaining the products that are manufactured outside of the U.S. by the foreign parent or affiliate. Thus, the foreign parent or affiliate manufactures telescopes outside of the U.S. and then uses its subsidiaries or affiliates to sell the telescopes in the U.S. By doing so, the defendants and their co-conspirators based outside of the U.S. sell directly in the U.S. by operating as a single global enterprise with their subsidiaries and affiliates based in North America.

47.     Defendants and their co-conspirators based outside the U.S. established subsidiaries in North America to market and sell their telescopes, as well as to facilitate the aims and purposes of the conspiracy. These corporate entities acted at the direction and control of their officers in China, including in setting telescope prices, supply, business strategy, customer development and relations, sales, and personnel decisions. The subsidiaries functionally operated as the distribution and sales offices for the China-based corporate parent or affiliate. As a result, the North America subsidiaries were intended to advance the aims of the conspiracy in the U.S.

48.     The Synta and Sunny corporate families operated as a single enterprise, not as separate corporate enterprises. By virtue of their integration, the U.S. subsidiaries were kept

informed about the competitor meetings and discussions occurring abroad and were not allowed to undercut the agreements on pricing and market allocation reached during those meetings and discussions. In meetings and discussions, the individual participants did not distinguish between entities within a particular corporate family, for example, referring to themselves or others as "Synta," "Celestron," "Sunny," or "Meade." The generic use of names means that individual participants did not always know the specific corporate affiliation of their counterparts nor did they distinguish between entities within their corporate families.  As a result, the entire corporate family was represented in meetings and discussions by their agents and were parties to the agreements reached in those meetings.

## II.      **DEFENDANTS' WRONGFUL COURSE OF CONDUCT**

### A.      **Consumer Telescopes**

49.      Astronomy is the study of celestial objects and phenomena. Amateur astronomy is an accessible and popular hobby that generates substantial revenue from the sale of telescopes each year.

50.      A telescope is an optical instrument that is designed to make distant objects appear magnified. Typically, consumer telescopes fall into one of the two main categories, either refractor telescope or reflector telescope, though a Schmidt-Cassegrain telescope is a combination of the two that is also available.

51.      The part of the telescope that gathers the light, called the objective, determines the type of telescope.

52.      A refractor telescope uses a glass telescope lens as its objective. The glass lens is at the front of the telescope and light is bent (refracted) as it passes through the lens.

53.      A reflector telescope uses a mirror as its objective. The mirror is close to the rear of the telescope and light is bounced off (reflected) as it strikes the mirror.

54.      A Schmidt-Cassegrain telescope uses both lenses and mirrors in its design. Its versality has resulted in it gaining widespread popularity.

55.      There are a variety of accessories that telescope enthusiasts can purchase. For example, telescopes also employ mounts that allow a user to move the telescope. Some telescopes

have motorized mounts and software that automatically move the telescope to track objects in the sky.

**B.    The Telescope Market**

56.    The global market for consumer telescopes is $250 to $500 million annually. The U.S. is one of the largest, if not the largest, market for consumer telescopes.  Within the consumer telescope market, there are two relevant markets—the manufacturing market and the distribution market.

**1.    The Manufacturing Market**

57.    The first relevant market is the manufacturing market for consumer telescopes and telescope accessories for import into the U.S (the "Manufacturing Market"). The geographic scope of the Manufacturing Market is global.

58.    Sunny and Synta control 80% of the Manufacturing Market.

59.    Synta and Sunny are each capable of manufacturing the various types of consumer telescopes. Yet, they have an unlawful arrangement whereby Synta typically manufactures high-end consumer telescopes and Sunny typically manufactures low-end consumer telescopes. Pursuant to their unlawful arrangement, Synta does not manufacture or respond to requests for a quote on products offered by Sunny, and vice versa. As a result of their respective market shares, agreements not to compete, and significant barriers to entry, Synta and Sunny have maintained an effective monopoly over the respective products that each sell. As a consequence, Synta and Sunny limit supply, charge supracompetitive prices, and engage in other anticompetitive acts that artificially increases telescope prices.

60.    The unlawful arrangement to allocate the market and not to compete allows Sunny and Synta to charge supracompetitive prices, restrict supply, and engage in anticompetitive product that results in U.S. consumers paying artificially higher prices for telescopes.

**2.    The Distribution Market**

61.    The second relevant market is the distribution market that is downstream from the Manufacturing Market (the "Distribution Market"). The geographic scope of the Distribution Market is the United States.

62.    Sunny and Synta control the Distribution Market by manufacturing, marketing and/or selling over 80 percent of consumer telescopes in the U.S.

63.    Synta acquired Celestron as its wholly owned subsidiary in 2005. Through the efforts of defendants and their co-conspirators, Celestron became the dominant U.S. telescope distributor in the United States. Sunny, assisted by Synta, acquired Meade as its wholly owned subsidiary. Synta and Sunny manufacture, market and/or sell their telescopes to distributors, including their respective subsidiaries Celestron and Meade, which then sell the telescopes through retailers, through dealers, and through the internet, to U.S. consumers. Collectively, Celestron and Meade are responsible for the bulk of sales of consumer telescopes sold in the U.S.

**C.    Defendants' Anticompetitive Conduct**

64.    As discussed above, the *Orion* litigation resulted in a jury verdict of antitrust liability against Sunny and its subsidiaries. In the *Orion* litigation, *inter alia*, the jury unanimously found:

a.    the defendants agreed with their competitors "to fix the price or credit terms for telescopes and accessories" in violation of Section 1 of the Sherman Act;

b.    the defendants agreed with a third party, other than a competitor, "tox the price or credit terms for telescopes and accessories in a manner that unreasonably restrained trade such that the anticompetitive effects outweighed any procompetitive effects" in violation of Section 1 of the Sherman Act;

c.    the defendants agreed with a competitor or potential competitor either "(a) not to compete with each other in the manufacture or sale of telescopes and accessories, or (b) to divide customers or potential customers between them" in violation of Section 1 of the Sherman Act;

d.    the defendants agreed with a third party, other than a competitor or potential competitor, either "(a) not to compete with each other in the manufacture or sale of telescopes and accessories, or (b) to divide customers or potential customers between them in a manner that unreasonably restrained trade such that the anticompetitive effects outweighed any procompetitive effects" in violation of Section 1 of the Sherman Act;

e.   the defendants "engaged in anticompetitive conduct" in violation of Section 2 of the Sherman Act;

f.   the defendants had a "specific intent to achieve monopoly power in the telescope manufacturing market" in violation of Section 2 of the Sherman Act;

g.   there is or was "a dangerous probability that defendants could achieve monopoly power" in violation of Section 2 of the Sherman Act;

h.   the defendants "knowingly entered into an agreement with another person or entity to obtain or maintain monopoly power in the telescope manufacturing market" in violation of Section 2 of the Sherman Act;

i.   the defendants "specifically intended that one of the parties to the agreement would obtain or maintain monopoly power in the telescope manufacturing market" in violation of Section 2 of the Sherman Act;

j.   the defendants "committed an over act in furtherance of the conspiracy" in violation of Section 2 of the Sherman Act;

k.   "Defendants Ningbo Sunny's and Sunny Optic's acquisition of Defendant Meade created a reasonable likelihood of substantially lessening competition or creating a monopoly in the telescope manufacturing market" in violation of Section 7 of the Clayton Act.

*See* Verdict Form, *Orion* Litigation (Nov. 26, 2019), ECF No. 501.

65.   The jury verdict against the defendants in the *Orion* Litigation shows that the defendants' antitrust liability has already been proven by a preponderance of the evidence.

**D.   Regulator Concerns in the Consumer Telescope Market**

66.   Regulators have raised antitrust concerns in the consumer telescope market for decades. In 1991, the Federal Trade Commission gave final approval to a consent agreement settling charges that a proposed joint venture between Meade and Celestron would have created a virtual monopoly in the manufacture and sale of Schmidt-Cassegrain telescopes. The agreement placed a 10-year requirement on Harbour Group and Diethelm (the former parents of Meade and Celestron) to obtain FTC approval before acquiring any company that manufactures or sells

Schmidt-Cassegrain telescopes in the United States. The consent agreement followed a decision by the U.S. District Court for the District of Columbia granting the FTC's motion for a preliminary injunction barring the acquisition of any assets or other interest in Celestron International by Harbour Group Investments, L.P. (Meade's parent), and further barring Diethelm Holding Ltd. (Celestron's parent) from acquiring any asset or other interest in Meade.

67.     In May 2002, shortly after the 10-year consent agreement terminated, Meade attempted to acquire Celestron. After the FTC authorized staff to seek a temporary restraining order and a preliminary injunction to stop this attempt, the parties abandoned the deal. According to the FTC's complaint, Meade's acquisition of Celestron's assets would adversely impact the telescope market by eliminating substantial actual competition between the two companies and by creating a monopoly in the market for telescopes. See "FTC Authorizes Injunction to Pre-empt Meade Instruments' Purchase of All, or Certain Assets, of Tasco Holding, Inc.'s Celestron International" Fed. Trade Comm'n (May 29, 2002), available at https://www.ftc.gov/news-events/press-releases/2002/05/ftc-authorizes-injunction-pre-empt-meade-instruments-purchase-all.

68.     The defendants used obfuscation to shield their concentration of the consumer telescope market from regulatory scrutiny.

**E.     Defendants and Their Co-Conspirators Colluded on Sunny's Acquisition of Meade**

69.     Meade used to be the leading U.S. telescope manufacturer and supplier. It owned a number of significant patents—including for GoTo technology software used to automatically track astronomical objects—and it had a facility in North America capable of manufacturing both low-end and high-end products.

70.     When Meade went up for sale in 2013, a small manufacturer named Jinghua Optical ("JOC") submitted a bid to purchase it. Purchasing Meade would have provided JOC a leg up in the industry by giving it a brand name, and a patent portfolio that would enable it to better compete against Synta and Sunny in both the manufacturing and distribution markets.

71.     Synta and Sunny colluded to prevent JOC from acquiring Meade. If JOC was successful, it would have preserved Meade as an independent distributor and strengthened JOC as

a competitor in the telescope manufacturing and distributing markets. Given the prior history with the FTC blocking an attempted merger between Celestron and Meade, Synta – the parent company of Celestron – could not attempt to acquire Meade directly without raising red flags. Instead, Chairman Ni (of Sunny) and Chairman Shen (of Synta), despite being supposed competitors, agreed that Sunny would attempt to acquire Meade with the assistance and financial support of Synta/Celestron.

72.    On information and belief, in exchange for this support, Sunny concealed Synta/Celestron's role in the acquisition from the public and the FTC, Celestron took equity in its competitor Meade, Sunny provided Synta/Celestron with access to Meade's valuable intellectual property, and Sunny shared its customers' data—including pricing data—with Synta/Celestron, allowing them to coordinate their prices and strategies. This cooperation between competitors strengthened Synta and Sunny's respective monopoly in the U.S. for their products.

73.    Synta/Celestron made payments and loans to Sunny. This is evidenced, for example, through an accounting by Celestron's CFO, Paul Roth, that documented payments. In addition, Sunny's Chairman wrote an email to Celestron's CEO, Dave Anderson, and board members with a request that they continue to financially support their illegal agreement.

| | |
|---|---|
| From: | nbsunny <nbsunny@vip.sina.com> |
| Sent: | Friday, December 13, 2013 12:43 AM |
| To: | DAVE ANDERSON |
| Cc: | david shen; Laurence Huen; Jack chen; shentakuo1 |
| Subject: | Fw: Fw: Celestron Payments星特朗付款 |

Dear Dave,

Thanks for your email and supports!

At the end of June or beginning of July, I discussed with you about the case of purchasing meade in USA. To prevent JOC to buy MEADE, we decided to purchase MEADE by sunny after discussion. But the premise of this case is CELESTRON / SYNTA should be provided the financial support to SUNNY.

At present, Sunny has already paid more than $10 millions to MEADE. According to your email, you said you will not provide the financial support to sunny in 2014.  It will not maintain MEADE´s operation, if only support them by sunny. We had borrowed a lot of money from bank for MEADE. Moreover, Meade still needs to addition $3.5 millions working capital to support their normal operation work at the first of 2014.

As your mention, the $10 millions that you support us is included the payment of goods that the terms of payment is 100days. But so far, CELESTRON is total paid $4.5 millions  if we calculated based on the term of payment is 100 days.

In 2014, we hope the term of payment that CELESTRON pay to sunny will less than 50 days form shipping. And maybe you can pay the SYNTA later; I think Mr. Shen will agree it. At present, Meade has already started to borrow money from East West Bank by offering guarantees from sunny. I think it will help to cushion MEADE if Meade get this money from bank.

Best regards,

Ni Wen Jun

74.    In addition to providing Sunny with financial support, Synta/Celestron with the help of their co-conspirators Anderson and Lupica were actively involved in structuring and negotiating the deal, including providing assistance with due diligence.

75.    Sunny's counsel was instructed to take direction from Synta/Celestron executives, including their co-conspirators Anderson and Lupica as stated in its engagement letter.

> 1.    Scope of Representation.  Except as we may agree otherwise in writing, we will be representing only the Client and will not be representing any parent, subsidiary or other affiliated entity nor any shareholder, partner, member, director, officer, employee, agent or insurer of the Client.  Except as we may otherwise agree, the terms of this letter apply to other engagements for the Client that we may undertake.  You have advised us that you will obtain tax advice regarding the Matter from a third party; accordingly, our firm will not be providing any tax advice in connection with the Matter, including, without limitation, tax structuring or tax consequences arising out of the Matter.  You have instructed us to take direction from and communicate directly with your advisors, Dave Anderson (President of Celestron), Laurence Huen, David Shen (head of Synta) and Joe Lupica.

76.    The FTC was concerned about the relationship between Synta and Sunny. To address the FTC's concerns, Mr. Ni (Sunny) formed Sunny Optics, Inc., the entity used to acquire Meade and became its sole shareholder. When the FTC inquired into whether Mr. Shen (Synta) was involved in Sunny's acquisition of Meade, his counsel represented on August 22, 2013 that "except for the limited advice to Peter Ni regarding how to acquire a U.S. company … David Shen has no role in the proposed acquisition of Meade." Given that Mr. Ni (Synta) and Mr. Shen (Sunny) had previously agreed on financial support to Sunny to acquire Meade, this statement was false.

77.    After the acquisition, Mr. Ni (Sunny) transferred his interest in Sunny Optics to Sunny for a nominal $1 amount.

78.    As part of the defendants' agreement, Celestron's CEO Mr. Lupica would become the CEO of Meade once the acquisition was finalized. Indeed, this is what took place once Sunny acquired Meade – Mr. Lupica was installed as Meade's CEO where he then replaced the existing management with officers from Celestron. Mr. Lupica acted as a conduit of information between Sunny and Synta.

79.    After Sunny acquired Meade, Sunny and Synta maintained their agreement not to compete with each other. For example, in a December 12, 2013 email thread between the principals

of Synta and Sunny, Mr. Shen (Synta) wrote to Mr. Ni (Sunny) to work out what he refers to as a "tacit understanding" with Celestron's CEO about not competing against Celestron for sales to Costco:

| | |
|---|---|
| **From:** | david shen <syntadavid@163.com> |
| **Sent:** | Thursday, December 12, 2013 6:36 PM |
| **To:** | kmnwj; 邱軍文 [Qiu Junwen] |
| **Subject:** | Re:转发: 米德公司的工资核定 [Wage verification of Meade] |

- Bidding with Costco between May and June (compete with Celestron for the price). This is a very important issue. This needs Director Ni to communicate face-to-face with DAVE when he goes to the United States. Don't bid. If you let the thing go by doing this, how would you deal with everything in the future? All products are produced by sunny. Following a conflict, celestron would not trust sunny any longer.

80.     Synta and Sunny's conspiracy removed Meade as a competitor, blocked JOC from strengthening its position as a competitor through an acquisition of Meade, increased market concentration, and solidified their monopoly power. Ultimately, Synta and Sunny reduced competition in the telescope manufacturing and distribution market in the United States through Sunny's acquisition of Meade.

**F.     Defendants Colluded to Sabotage a Competitor**

81.     The *Orion* Litigation was triggered by Synta and Sunny interfering with its competitor Orion's attempt to acquire certain valuable assets, such as telescopes.com, from online retailer Hayneedle ("Hayneedle Assets"). The defendants and their co-conspirators sabotaged Orion's efforts in 2014 to acquire the Hayneedle Assets by simultaneously cutting off Orion's lines of credit to coerce it into dropping its bid to acquire the assets.

82.     On May 12, 2014, Orion sent Hayneedle a letter of intent to purchase the Hayneedle Assets. On June 14, 2014, Synta sent Orion an email that ended Orion's line of credit, stating: "if Orion really buys Hayneedle, this will be the beginning of hazard, we could not trust Orion's credit any more." Synta then forwarded this email to Sunny and asked it to follow Synta's lead in cutting off Orion's line of credit. Subsequently, Sunny sent a nearly identical email withdrawing Orion's line of credit. By doing so, Sunny and Synta interfered with Orion's efforts to purchase the Hayneedle Assets that would have allowed it to more effectively compete in the telescopes market in the United States.

**G.    Defendants' Anticompetitive Conduct Involved Agreements to Fix Prices and Allocate the Telescope Markets**

83.    In the *Orion* Litigation, evidence revealed that the defendants engaged in a conspiracy to fix prices for consumer telescopes, to allocate the consumer telescope market, illegally acquired assets, and unlawfully monopolized and/or attempted to monopolize the manufacturing and distribution market for consumer telescopes. They leveraged cooperation and control of the consumer telescope manufacturing market to takeover the distribution market through their syndicate of companies. The defendants' anticompetitive conduct includes, without limitation in the consumer telescopes market: (a) price fixing; (b) agreeing to allocate the market; (c) colluding to facilitate Sunny's acquisition of Meade; (c) exchanging non-public, material information with each other, such as Meade's intellectual property, business plans, and product pricing strategies; and (d) engaging in a conspiracy to assist each other's concentration and maintenance of monopoly power.

84.    The defendants and their co-conspirators coordinated and agreed to fix prices part of their unlawful agreements. Their objective was to avoid direct competition with each other's products and created ways to protect each other from further competition. Mr. Lupica wrote that the purpose of this collective agreement was for the four companies—Sunny, Synta, Celestron, and Meade—to "dominate the telescope industry."

85.    In charging certain distributors, Synta and Sunny negotiate together on how much to charge and then fix the price. As Chairman Shen (Synta) wrote to Sunny: "we do not need to wage a price war" and explained that "suspension of supply" was the best joint strategy. "Price war is a self-imposed destruction. Our pricing strategy of sales should not be altered, even when Orion lowers its prices, we would reduce sales volume rather following suit blindly."

86.    Synta and Sunny discussed and agreed on the price to charge distributors. For example, Joyce Huang (Synta) told James Chiu (Sunny) that Sunny's "payment terms should be the same with Suzhou [Synta]."

| | |
|---|---|
| **From:** | joyce <hcsynta@sysnix.com.tw> |
| **Sent:** | Wednesday, June 04, 2014 10:46 PM |
| **To:** | nbsunny |
| **Subject:** | Re: 转发: Re:Hayneedle fwd: |
| **Attachments:** | 2K3-S-082.xls; 2K4SY013.xls; 2K4-S-046.xls; 2K4-S-058.xls |

James,
Can you please inform Peter that you know about this matter (just copy the content) from Suzhou. Hence, the payment terms should be the same with Suzhou. Please tell him to make these payments immediately.
Joyce

87.    Synta and Sunny also conspired with Celestron to steal competitors' key business information. Sunny sells products to Celestron's competitors, and then provided Celestron with material business information about its competitors, such as product pricing, credit agreements, and order forecasts. In May 2015, for example, Sunny provided several years' worth of Orion order information to Celestron's CEO.

**From:** nbsunny [mailto:nbsunny@vip.sina.com]
**Sent:** Friday, May 22, 2015 4:58 PM
**To:** COREY LEE
**Subject:** 回复: RE: orion 订单统计   Re: Order statistics

Dear Corey,

This is for 2014. I will send for 2013 on Monday.

Junwen

88.    In a deposition, Mr. Chiu testified under oath that the type of information that he shared with Celestron are trade secrets:

> Q. How about the volume of business that a customer does with Ningbo Sunny? Is that a trade secret, too?
> A. Certainly, that's also a trade secret.
> Q. How about even the fact that somebody is buying from Ningbo Sunny, is that a trade secret?
> A. I consider it a trade secret.

89.    Documents also reveal that defendants and their co-conspirators agreed to allocate the telescope markets. James Chiu (Sunny) wrote to Sylvia Shen to discuss "how to avoid conflict

with Celestron products" and wrote that "[i]f the customer visits our factory and confirms their intention to cooperate with us, we will consider the strategy of separation from Celestron products or adopt different product prices to protect Celestron."

90.     Mr. Chiu (Sunny) also wrote that Sunny "will take prompt action to avoid conflict in the astronomical market" including "abandoning the small OEM customers so as to protect big customers."

91.     In another email, Chairman Shen (Synta) wrote to Mr. Anderson (Celestron): "The best way in the future is to divide the products and sell them into different markets to reduce conflicts."

92.     As Chairman Shen (Synta) explained in an email describing Chairman Ni (Sunny): "Director Ni will not be a competitor and is trustworthy when it comes to business.".

93.     Defendants and their co-conspirators sought to help Celestron dominate the consumer telescope market in the United States. To achieve this objective, Sunny/Meade agreed not to compete against Celestron. As a Meade executive wrote to Meade's CEO: "Mr. Ni . . . doesn't want to disrupt Synta's business. However, this promo will not be disruptive to Celestron business."

94.     By reducing competition in the relevant market and by their unlawful agreements, defendants and their co-conspirators coordinate and set supracompetitive prices beyond what they could command in a competitive market. They seek to avoid competition with each other and develop strategies to do so. As described in emails, this collective action enables them to "dominate the telescope industry" and avoid waging a "price war" that would harm their monopoly profits.

## H.     Defendants' Conduct Has Caused Antitrust Injury to Plaintiffs and Class Members

95.     Defendants' and their co-conspirators' actions have injured the plaintiffs and the relevant markets. Defendants' and their co-conspirators' conduct has resulted in fewer choices for consumers in the telescopes market. This has injured plaintiffs and Class members by causing arbitrarily inflated and supracompetitive prices for telescopes. The defendants' conduct had the following effects, among others:

     a.    The number of manufacturers and products for consumer telescopes and accessories has been reduced as a result of Synta's acquisition of Celestron and Sunny's acquisition of Meade;

     b.    There have been no new meaningful entrants into the consumer telescope market for a decade and many independent distributors have gone out of business because of Synta and Sunny's collusion;

     c.    Price competition for telescopes has been restrained or eliminated;

     d.    Telescope prices have been fixed, raised, maintained or stabilized at artificially inflated prices;

     e.    Indirect purchasers of telescopes have been deprived of purchasing telescopes in a competitive market; and

     f.    Indirect purchasers of telescopes paid artificially inflated prices.

96.    In particular, for products where Synta and Sunny agreed to divide the telescope manufacturing market between them, price competition has been restrained or eliminated. By virtue of their agreement, telescope manufacturing output has been restricted, and the prices of telescopes have been fixed, raised, stabilized or maintained at artificially inflated levels, and purchasers of telescopes, such as the plaintiffs and Class members, have been deprived of purchasing products in a competitive market.

97.    Sunny's acquisition of Meade reduced consumer choice, competition and innovation. After Sunny acquired Meade, Meade has not significantly competed with Celestron. Moreover, the acquisition of Meade prevented companies that are trying to compete against defendants, such as JOC, from obtaining a potential manufacturing facility and intellectual property that would have increased competition.

98.    In addition, the absence of replacement suppliers following Sunny's dismantling of Meade's manufacturing capabilities shows that the barriers to entry combined with the defendants' anticompetitive conduct have effectively foreclosed competition in the manufacturing market.

99.    In the distribution market, defendants' conduct has restrained or eliminated price competition, particularly for products where defendants have agreed to divide the market between

them. By fixing prices and credit terms so that competitors pay substantially more than Celestron, and by sharing competitor distributor's confidential business information with Celestron, defendants and their co-conspirators have prevented independent distributors from fairly competing against Celestron and putting pressure to lower prices.

100.    Through their domination of the supply chain and unlawful agreements, defendants have effectively prevented new market entrants at the distribution level, and forced many distributors to go out of business, thereby continuing to inhibit and restrict competition and injuring consumers like plaintiffs.

101.    As a result of the conduct alleged herein, during the Class Period, plaintiffs and the members of the Classes paid supracompetitive prices for telescopes. Telescope distributors and retailers passed on inflated prices to plaintiffs and the Class members.  Those overcharges have unjustly enriched the defendants.

102.    The antitrust laws were meant to punish and prevent these types of antitrust injuries.

103.    Telescopes follow a traceable physical chain of distribution from the defendants to plaintiffs and Class members – any cost change attributable to telescopes can be traced through the chain of distribution to plaintiffs and Class members.

104.    Telescope prices can be traced to show that price changes paid by direct purchasers affect prices paid by indirect purchasers. Here, the inflated prices of telescopes resulting from the defendants' price-fixing conspiracy have been passed on to plaintiffs and the other Class members by distributors and retailers. The precise amount of the overcharge affecting telescope prices can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extend and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to plaintiffs and Class members can be quantified.

105.    Plaintiffs and Class members have sustained injury to their property as a result of the defendants' violations of the antitrust, consumer protection, and unjust enrichment laws. They have paid higher prices for telescopes than they would have paid in the absence of the defendants' illegal conduct and, as a result, have suffered damages in an amount not yet determined.

I.      **The Consumer Telescope Market is Vulnerable to The Conduct Alleged**

106.    The consumer telescope manufacturing and distribution markets are vulnerable to price-fixing agreements given their structure and characteristics that make collusion more likely in these markets. These markets, specifically, have: (1) high barriers to entry; (2) high concentration; and (3) inelastic demand.

**1.      High Barriers to Entry in the Relevant Markets**

107.    Ordinarily, one would expect to see new entrants in a market with supracompetitive prices. Where there are significant barriers to entry, however, new entrants are less likely to enter the market. These barriers to entry contribute to the formation and maintenance of a monopoly.

108.    In the telescope manufacturing and distribution markets, there are high barriers to entry that make it more costly and time-intensive for new competitors to enter the market, such as multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and customer goodwill.

109.    The substantial barriers to entry allow the defendants and their co-conspirators to hold their grip on supply and maintain supracompetitive prices. First, manufacturing telescopes requires large capital investments. There are too few independent distributors for an independent manufacturer to enter the market and be profitable. Second, manufacturing telescopes requires intellectual property rights, such as patents on telescope software used to detect and track celestial objects that is popular in the consumer market. Sunny's acquisition of Meade, the result of collusion between defendants, blocked competitors from gaining access to intellectual property that might have resulted in an independent manufacturer successfully competing with Sunny or Synta with this technology.

110.    Furthermore, the absence of replacement suppliers following Sunny's dismantling of Meade's manufacturing capabilities shows that the barriers to entry combined with the defendants' anticompetitive conduct have effectively foreclosed competition in the manufacturing market.

### 2.      The Relevant Markets are Highly Concentrated

111.    A highly concentrated market is more susceptible to anticompetitive conduct, such as collusion.

112.    Defendants and their co-conspirators control 80 percent of the consumer telescope manufacturing market globally.

113.    Defendants and their co-conspirators control 80 percent of the consumer telescope distribution market in the United States.

114.    The consumer telescope manufacturing market was not always highly concentrated. Through their collusion, however, Sunny and Synta concentrated their power in the market by preventing competitors from entering the market so as to ensure they would become the primary source of consumer telescopes.

115.    Sunny and Synta also conspired to leverage their collective market power in the consumer telescope manufacturing market to control the consumer telescope distribution market.

116.    When Sunny acquired Meade—with the help of Synta, Celestron and their co-conspirators—the defendants removed Meade as a competitor from the distribution market. Following the acquisition, Celestron and Meade have not seriously competed with each other.

117.    Moreover, Sunny and Synta concentrated their control of the distribution market by engaging in a conspiracy to fix prices and unlawful agreements not to compete with each other. Specifically, Synta and Sunny offered supply to Celestron at prices below, and with better credit terms, than those offered to distributors outside of their syndicate of companies. Without meaningful sources of supply beyond Sunny and Synta, prices in the distribution market for consumer telescopes were artificially inflated. As a result, plaintiffs and the Class members had no choice but to pay the supracompetitive prices caused by the defendants and their co-conspirators' unlawful conduct.

### 3.      Demand is Inelastic for Consumer Telescopes

118.    Demand is "inelastic" if increasing the product price results in only a small decline in sales of that product. Inelastic demand is typically the result of there being few choices for

consumers to purchase an alternative, cheaper product of similar quality. Thus, consumers will continue to purchase the product despite a price increase.

119.    To profit from their anticompetitive conduct that resulted in higher prices for consumer telescopes, demand must be relatively inelastic. Otherwise, the higher prices would result in consumers purchasing cheaper alternatives, resulting in a decline in sales, revenue, and profit.

120.    The consumer telescope market has inelastic demand with insufficient substitutes that allowed defendants to raise their prices and profit from their collusion.

## III.    <u>CLASS ACTION ALLEGATIONS</u>

121.    Plaintiffs bring this action on behalf of themselves and as a class action seeking equitable and injunctive relief on behalf of the following classes ("Nationwide Injunctive Class") under Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2):

> All persons and entities who indirectly purchased a telescope for their own use and not for resale that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

122.    Plaintiffs also bring thing this action on behalf of themselves and as a nationwide class of Indirect Purchaser States under Rule 23(a) and (b)(2), seeking damages under California state antitrust and consumer protection laws and common law unjust enrichment on behalf of the following class ("Damages Class"):

> All persons and entities who indirectly purchased a telescope for their own use and not for resale in one of the Indirect Purchaser States that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition Celestron in 2005 through such time class notice is given in this action.

123.    The "Indirect Purchaser States" are: Arizona, Arkansas, California, Connecticut, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

**A.**     **California Law Should Apply to the Nationwide Indirect Purchaser States' Damages Class**

124.     The application of California law to a class of indirect purchasers from the Indirect Purchaser States is appropriate here where the defendants and their co-conspirators can be found in California or have their principal places of business in California; many key witnesses reside in California; the defendants and their co-conspirators coordinating their conspiracy in California; and the defendants and their co-conspirators had substantial sales in California. Thus, it is appropriate to apply California law.

**1.**     **Defendants and Their Co-Conspirators Located in California and Coordinated the Conspiracy from California**

125.     Other than the foreign entities, the primary corporate entities that furthered the conspiracy maintained their principal place of business in California or were incorporated in California.

126.     Defendant Celestron is headquartered in Southern California and maintains its principal place of business there. Celestron's acts in furtherance of the conspiracy took place in California.

127.     Defendant Sky-Watcher is headquartered in Southern California and maintains its principal place of business there. Sky-Watcher USA's acts in furtherance of the conspiracy took place in California.

128.     Co-conspirator Meade is headquartered in Southern California and maintains its principal place of business there. Meade's acts in furtherance of the conspiracy took place in California. When Sunny acquired Meade in 2013, Meade had more than 10 different legal entities formed in California that paid state taxes each year, including Meade Instruments Holding Corp. Meade Coronado Holding Corp., MTSC Holding Corp., MC Holding Corp., Meade Instruments Europe Corp., Meade.com and Coronado Instruments, Inc., among others.

**2.      Individuals Engaged in the Conspiracy in California**

129.    Chairman Shen regularly comes to California and other places in the United States to meet with Synta's distributors. Chairman Shen's acts in furtherance of the conspiracy took place in California.

130.    Joe Lupica—former CEO of Celestron and Meade—resides in California. Mr. Lupica's acts in furtherance of the conspiracy took place in California.

131.    Corey Lee, Celestron's CEO, resides in California. Mr. Lee's acts in furtherance of the conspiracy took place in California.

**3.      Orion, a Target of the Conspiracy, is Located in California**

132.    A jury delivered a verdict in favor of Orion, finding that it was harmed by the conspiracy alleged herein.

133.    Orion, which competes with Sunny and Synta, both as a manufacturer and as a distributor of consumers telescopes, maintains corporate offices and a retail store in Northern California.

**4.      Defendants and Their Co-Conspirators Targeted California Residents**

134.    Defendants and their co-conspirators directed their conduct at persons and activities within California. Synta, for example, manufactures a large proportion of products for Orion, which is located in California.

135.    Many of the Class members are located in California. California has more than seventy amateur astronomy clubs which, on information and belief, is more than any other state.

136.    Defendants have violated California antitrust and consumer protection laws, and California has an interest in both protecting California consumers and in punishing companies, like the defendants, that operate within its borders and violate its laws.

**B.      In the Alternative, Plaintiffs Will Seek to Certify State Damages Classes**

137.    In the alternative, if California law is not applied to class members' claims, plaintiffs will seek certification of classes asserting damages under the antitrust statutes and/or consumer protection statutes of the following Indirect Purchaser States (collectively, the "State Damages Classes"):

**Arizona**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Arizona that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Arkansas**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Arkansas that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**California**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in California that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Connecticut**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Connecticut that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**District of Columbia**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in District of Columbia that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Florida**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Florida that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Hawaii**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Hawaii that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Illinois**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Illinois that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Iowa**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Iowa that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Kansas**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Kansas that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Maine**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Maine that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Massachusetts**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Massachusetts that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Michigan**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Michigan that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Minnesota**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Minnesota that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Mississippi**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Mississippi that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Missouri**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Missouri that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Montana**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Montana that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Nebraska**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Nebraska that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Nevada**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Nevada that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**New Hampshire**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in New Hampshire that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**New Mexico**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in New Mexico that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**New York**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in New York that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**North Carolina**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in North Carolina that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**North Dakota**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in North Dakota that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Oregon**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Oregon that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Rhode Island**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Rhode Island that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**South Carolina**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in South Carolina that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**South Dakota**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in South Dakota that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Tennessee**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Tennessee that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Utah**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Utah that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Vermont**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Vermont that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**West Virginia**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in West Virginia that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

**Wisconsin**: All persons and entities who indirectly purchased a telescope for their own use and not for resale in Wisconsin that was manufactured or sold by the defendants or their co-conspirators, or any current or former affiliate thereof, during the period from and including the date of Synta's acquisition of Celestron in 2005 through such time as class notice is given in this action.

138.     The Nationwide Injunctive Class, Damages Class, and the State Damages Classes are referred to herein as the "Classes" unless otherwise indicated. Excluded from the Classes are the defendants and their co-conspirators, their parent companies, subsidiaries and affiliates, any unnamed co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivision, agencies and instrumentalities, and persons who purchased telescopes directly. Plaintiffs reserve the right to amend the aforementioned definitions if discovery and further investigation reveal that they should be expanded or otherwise modified.

139.     Plaintiffs brings this action as a class action pursuant to Rule 23:

a.     **Numerosity**: The number of Class members is so large and geographically dispersed throughout the U.S. that the joinder of all its members is impracticable. The defendants have information in their control and possession that can be used to determine the total number of Class members. Plaintiffs believe that the number of Class members is in the tens of thousands.

b.     **Typicality**: Plaintiffs' claims are typical of the claims of the Class members and arise from the same practices and conduct that give rise to the claims of the Class members. Plaintiffs and the Class members have been injured by the same unlawful practices and conduct of defendants. Defendants practices and conduct injured all Class members in substantially identical fashion.

c.     **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are not adverse or antagonistic to those of the other Class members. Plaintiffs' counsel from Susman Godfrey is experienced in prosecuting consumer class actions and complex litigation, is committed to fair and robust competition, and will vigorously prosecute this action.

d. **Commonality and Predominance**: Numerous common issues of law and fact common to the Class exist that predominate over questions that affect particular Class members. Defendants' conspiracy, which was generally applicable to all Class members, makes class-wide relief appropriate. These common questions of law and fact include, without limitation:

i. Whether the Manufacturing Market is a relevant product market;

ii. Whether the Distribution Market is a relevant product market;

iii. Whether the United States is a relevant geographic market for the Distribution Market;

iv. Whether the Manufacturing Market is a global geographic market;

v. Whether defendants possess monopoly power in the relevant product markets;

vi. The identity of the participants of the Conspiracy;

vii. Whether defendants and their co-conspirators engaged in a combination or conspiracy to fix, raise, maintain, or stabilize prices of telescopes sold in the United States;

viii. The duration of defendants' conspiracy and the acts carried out by the defendants and their co-conspirators in furtherance of the conspiracy;

ix. Whether plaintiffs and other Class members knew or suspected the conspiracy or had any means to discover the conspiracy;

x. Whether the defendants' fraudulent concealed the existence of the conspiracy from the plaintiffs and other Class members;

xi. Whether the defendants' conduct violated Section 1 of the Sherman Act;

xii. Whether the defendants' conduct violated Section 2 of the Sherman Act;

xiii. Whether the defendants' conduct violated state antitrust and/or consumer protection laws;

xiv. Whether defendants' conduct caused the prices of telescopes sold in the United States to be artificially fixed, raised, maintained, or stabilized at noncompetitive prices;

xv. Whether defendants' and their co-conspirators' conduct caused injury to the property of plaintiffs and the other Class members;

xvi. Whether plaintiffs and other Class members are entitled to equitable and injunctive relief and, if so, the nature and extent of such relief.

e. **Superiority**:  A class action is warranted because requiring Class members to pursue their claims individually would invite separate suits, which risks inconsistent or varying adjudication, duplication of costs, attorneys' fees, and demands of judicial resources. Moreover, the expense and burden of individual litigation makes it impracticable for the members of the Classes individually to seek legal redress for defendants' wrongful conduct. A class action will promote an orderly and expeditions administration and adjudication of the Class claims, economies of time and expenses, and uniformity of adjudication. Plaintiffs know of no difficulty that will result from managing this litigation that would preclude maintaining it as a class action.

## IV. THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFFS' CLAIMS

### A. The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover Their Claims Until Recently

140. The statute of limitations did not begin to run until, at the earliest, September 2019 when evidence of defendants' conspiracy was first made public in the *Orion* Litigation. Plaintiffs and Class members had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on constructive notice herein, until that date at the earliest.

141. Plaintiffs and Class members had no direct contact or interaction with defendants. They hey had no means from which they could have discovered the combination and conspiracy alleged in this Complaint before September 2019.

142. Prior to September 2019, no information in the public domain was available to plaintiffs and Class members concerning the combination or conspiracy alleged herein. To the extent any information was available in the public domain, defendants and their co-conspirators denied the existence of the combination and conspiracy alleged herein.

143. Plaintiffs and Class members are indirect purchasers of consumer telescopes who did not purchase telescopes for resale. They did not have access to any facts or information

concerning any aspect of the defendants or their co-conspirators' dealings with competitors or direct purchasers, much less the fact that the defendants and their co-conspirators had engaged in the combination and conspiracy alleged herein.

144.    Given the above, the statute of limitations as to plaintiffs' and the Classes' claims did not begin to run until, at the earliest, September 2019.

**B.    Fraudulent Concealment Tolled the Statute of Limitations**

145.    In the alternative, the statute of limitations should toll the plaintiffs and the Classes'' claims by the application of the doctrine of fraudulent concealment. Plaintiffs and Class members did not discover, and could not discover through reasonable diligence, the combination or the conspiracy alleged herein until, at the earliest, September 2019 when evidence of defendants' conspiracy became public in the *Orion* Litigation.

146.    Before September 2019, plaintiffs and Class members did not have knowledge of the defendants' unlawful conduct and did not know that they were paying supra-competitive telescope prices throughout the United States during the Class Period. Plaintiffs and Class members had no information, actual or constructive, available to them that suggested they were being injured by the defendants' unlawful conduct.

147.    The defendants' affirmative acts alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out so as to avoid detection. The following are illustrative examples of defendants' fraudulent concealment:

148.    Synta and Sunny attempted to conceal the existence of their transactions in connection with Sunny's acquisition of Meade. David Anderson revealed in an email recently disclosed in pending litigation that "Since July Celestron has made $10 million in anticipated payments to Sunny. This represents a majority of the monies that will be paid to Sunny this year. If Celestron continues with this payment pattern it will need to disclose this arrangement to its auditors and its bank. Though we see this as temporary an outside group (such as the bank or auditing firm) will interpret it as a significant change due to the fact that the majority of payments for the last 7 months were made in anticipation with no discernable benefit to Celestron."

149.    Additionally, when the FTC inquired into whether Chairman Shen (Synta) was involved in Sunny's acquisition of Meade, Sunny's counsel Robert Magelnicki represented to the FTC that "except for the limited advice to Peter Ni regarding how to acquire a U.S. company . . . , David Shen has no role in the proposed acquisition of Meade[.]" This statement was false given that Chairman Ni (Sunny) and Chairman Shen (Synta) had previously agreed  that Chairman Shen and his companies would provide financial support to Sunny in connection with the Meade acquisition.

150.    Furthermore, as part of Synta and Sunny's collusion regarding Meade, Celestron took equity in Meade, which is memorialized in defendants and their co-conspirators' shadow books.

151.    In addition to the foregoing acts of fraudulent concealment, by their very nature, the defendants' anticompetitive conspiracy and unlawful combinations were inherently self-concealing. Telescopes are not exempt from antitrust regulation and, thus, plaintiffs and Class members reasonably believed the consumer telescopes industry to be a competitive industry. On information and belief, the defendants met and communicated in secret and agreed to keep the facts about its collusive conduct from being discovered by any member of the public or by distributors, retailers, and other direct purchasers with whom they did business. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of the defendants' telescope prices before September 2019, at the earliest.

152.    Plaintiffs and the Class members could not have discovered the conspiracy or combination alleged herein, prior to September 2019, by the exercise of reasonable diligence because of the deceptive actions used by the defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

153.    Because the alleged combination or conspiracy alleged herein was self-concealing and affirmatively concealed by the defendants and their co-conspirators, plaintiffs and Class members s had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until, at the

earliest, September 2019 when evidence of defendants' conspiracy was first made public in the *Orion* Litigation.

154.    For these reasons, the statute of limitations applicable to plaintiffs and the Classes' claims was tolled and did not begin to run until September 2019.

## V.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of Section 1 of the Sherman Act (15 U.S.C. §1)
(on behalf of Plaintiffs and the Nationwide Injunctive Class)**

155.    Plaintiff repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

156.    Defendants and their co-conspirators engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

157.    Defendants' actions in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

158.    During the Class Period, defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for telescopes, thereby creating anticompetitive effects.

159.    The anticompetitive acts were intentionally directed at the United States market for telescopes and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for telescopes throughout the United States.

160.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for telescopes.

161.    As a result of the defendants' unlawful conduct, plaintiffs and other similarly situated indirect purchasers in the Nationwide Injunctive Class who purchased telescopes have been harmed by being forced to pay inflated, supra-competitive prices for telescopes.

162.    In formulating and carrying out the alleged agreement, understanding and conspiracy, the defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

163.    The defendants and their co-conspirators' conspiracy had the following effects, among others:

      a.    Price competition in the market for telescopes has been restrained, suppressed, and/or eliminated in the United States;

      b.    Prices for telescopes sold by the defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

      c.    Plaintiffs and members of the Nationwide Injunctive Class who purchased telescopes indirectly from the defendants and their co-conspirators have been deprived of the benefits of free and open competition.

164.    Plaintiffs and members of the Nationwide Injunctive Class have been injured and will continue to be injured in their business and property by paying more for telescopes purchased indirectly from the defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

165.    The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

166.    Plaintiffs and members of the Nationwide Injunctive Class are entitled to an injunction against the defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF

### Violation of Section 2 of the Sherman Act
### (on behalf of Plaintiffs and the Nationwide Injunctive Class)

167.    Plaintiffs repeat and reallege the allegations of the Paragraphs above as is fully set forth herein.

168.     The relevant market is the consumer telescope manufacturing market globally and distribution market in the United States.

169.     The defendants and their co-conspirators have monopoly power in both the manufacturing market and the distribution market through:

      a.   Synta's acquisition of Celestron in 2005;

      b.   Synta facilitating Sunny's acquisition of Meade in 2013, thereby eliminating Meade as a competitor manufacturer and distributor and increasing market concentration;

      c.   Synta and Sunny agreeing to allocating the consumer telescope market such that Synta manufacturers higher-end products and Sunny manufacturers lower-end products;

      d.   Synta and Sunny agreeing to not to bid on RFQs for each other's product offerings;

      e.   Synta and Sunny exchanging their intellectual property and material, non-public information with each other, thereby enabling them to coordinate prices and strategies; and

      f.   Synta and Sunny exchanging their competitors' (*e.g.*, Orion's) intellectual property and material, non-public information with each other, thereby enabling them to coordinate prices and strategies.

170.     The defendants and their co-conspirators have willfully acquired or maintained their monopoly in the consumer telescope market through the aforementioned conduct plus:

      a.   Colluding to prevent JOC from acquiring Meade;

      b.   Making false representations to the FTC regarding Synta's involvement in Sunny's acquisition of Meade; and

      c.   Colluding to sabotage Orion's acquisition of the Hayneedle Assets.

171.     The defendants' acquisition or maintenance of its monopoly in the consumer telescope market is not a result of growth or development as a consequence of a superior product, business acumen, or historic accident, but is the result of the unlawful conduct alleged herein.

172.     There is no procompetitive justification for the defendants' anticompetitive conduct that outweighs its anticompetitive effects; namely, the foreclosure of competition in the consumer telescopes market. Any possible procompetitive benefits for such conduct could have been obtained by less restrictive alternatives.

173.     The defendants' willful acquisition or maintenance of its monopoly in the consumer telescopes market injured, and continues to injure, plaintiffs and members of the Nationwide Class in their property by:

a.     Restricting output and limiting consumer choice in the consumer telescope market; and

b.     Forcing plaintiffs and members of the Nationwide Class to pay artificially high, supracompetitive prices for telescopes.

174.     The injury to plaintiffs and members of the Nationwide Class was a foreseeable consequence of the defendants' willful acquisition or maintenance of its monopoly in the consumer telescope market.

175.     Plaintiffs and members of the Nationwide Class have suffered irreparable harm and do not have an adequate remedy at law. Accordingly, plaintiffs and members of the Nationwide Class seek injunctive and equitable relief.

### THIRD CLAIM FOR RELIEF

**Violation of Section 2 of the Sherman Act (15 U.S.C. §2)**
**(on behalf of Plaintiffs and the Nationwide Injunctive Class)**

176.     Plaintiffs repeat and reallege the allegations of the Paragraphs above as if fully set forth herein.

177.     The relevant market is the consumer telescope manufacturing market globally and distribution market in the United States.

178.     The defendants have attempted to monopolize the consumer telescope market through:

a.     Synta's acquisition of Celestron in 2005;

b.   Synta facilitating Sunny's acquisition of Meade in 2013, thereby eliminating Meade as a competitor manufacturer and distributor and increasing market concentration;

c.   Synta and Sunny agreeing to allocating the consumer telescope market such that Synta manufacturers higher-end products and Sunny manufacturers lower-end products;

d.   Synta and Sunny agreeing to not to bid on RFQs for each other's product offerings;

e.   Synta and Sunny exchanging their intellectual property and material, non-public information with each other, thereby enabling them to coordinate prices and strategies; and

f.   Synta and Sunny exchanging their competitors' (*e.g.*, Orion's) intellectual property and material, non-public information with each other, thereby enabling them to coordinate prices and strategies.

179.   The defendants have willfully engaged in predatory or anticompetitive conduct with the specific intent of monopolizing the consumer telescope market through the aforementioned conduct plus:

a.   Colluding to prevent JOC from acquiring Meade;

b.   Making false representations to the FTC regarding Synta's involvement in Sunny's acquisition of Meade; and

c.   Colluding to sabotage Orion's acquisition of the Hayneedle Assets.

180.   The anticompetitive conduct described herein undertaken by the defendants create a dangerous probability that the defendants will achieve monopoly power in the consumer telescope market. Any possible procompetitive benefits for such conduct could have been obtained by less restrictive alternatives.

181.   The defendants' predatory and anticompetitive conduct described herein, which was done with the intent of monopolizing the consumer telescope market, injured, and continues to injure, plaintiffs and members of the Nationwide Class in their property by:

a.   Restricting output and limiting consumer choice in the consumer telescope market; and

b.   Forcing plaintiffs and members of the Nationwide Class to pay artificially high, supracompetitive prices for telescopes.

182.   The injury to plaintiffs and members of the Nationwide Class was a foreseeable consequence of the defendants' predatory and unlawful conduct, described herein, which was done with the intent of monopolizing the consumer telescope market.

183.   Plaintiffs and members of the Nationwide Class have suffered irreparable harm and do not have an adequate remedy at law. Accordingly, plaintiffs and members of the Nationwide Class seek injunctive and equitable relief.

## **FOURTH CLAIM FOR RELIEF**

### **Violation of Section 7 of the Clayton Act (15 U.S.C. § 18)**
### **(on behalf of Plaintiffs and the Nationwide Injunctive Class)**

184.   Plaintiffs repeat and reallege the allegations of the Paragraphs above as if fully set forth herein.

185.   As a result of Sunny's acquisition of Meade and Synta's facilitation thereof, Synta and Sunny has been able to exercise market power in the consumer telescope manufacturing and distribution markets. The acquisition created the largest syndicates of telescope manufacturers globally and telescope distributors in the United States. Both markets are highly concentrated and the acquisition further significantly increased market concentration.

186.   It is unlikely that entry into the market would remedy, in a timely manner, the anticompetitive effects from Sunny's acquisition of Meade in 2013. Entry is difficult and likely to take years because of the intellectual property needed to manufacture telescopes, the time required to plan for and to complete manufacturing facilities, and the time required to plan for and establish the distribution channels.

187.   The effect of the mergers substantially lessens competition in the provision of in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, in the following ways:

a. Eliminating actual, direct, and substantial competition between Synta and Sunny in the consumer telescope manufacturing and distribution markets;

b. Increasing the ability of the merged entities to unilaterally raise prices of consumer telescopes;

c. Eliminating Meade as a substantial and independent competitor in the consumer telescope manufacturing and distribution market;

d. Eliminating the diversity of product offerings by defendants;

e. Increasing the prices of telescopes to consumers; and

f. Reducing incentives to improve product quality in the relevant markets.

188. Sunny's acquisition of Meade has substantially lessened competition in the consumer telescope manufacturing and distribution markets in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18 as well as decreased telescope product options and increased telescope prices to consumers.

## **FIFTH CLAIM FOR RELIEF**

### **Violation of the State Antitrust Laws**
**(on behalf of Plaintiffs and the Damages Class or, In the Alternative, on Behalf of the State Damages Classes)**

189. Plaintiffs repeat and reallege the allegations of the Paragraphs above as if fully set forth herein

190. During the Class Period, the defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of telescopes in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

191. The contract, combination, or conspiracy consisted of an agreement among the defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for telescopes and to allocate products and customers in the United States.

192. In formulating and effectuating this conspiracy, the defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

a.   participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price telescopes at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by plaintiffs and members of the Damages Class with respect to telescopes sold in the United States;

b.   allocating products and customers in the United States in furtherance of their agreements; and

c.   participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

193.   The defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate products and customers.

194.   The defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

195.   The defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, et seq.

a.   The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout Arizona; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for telescopes.

b.   During the Class Period, the defendants' illegal conduct substantially affected Arizona commerce.

c.   As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.   By reason of the foregoing, the defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

196.   The defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, et seq.

a.   During the Class Period, the defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. The defendants have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, telescopes at supra-competitive levels.

b.   The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, telescopes.

c.   For the purpose of forming and effectuating the unlawful trust, the defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of telescopes; and (2) Allocating among themselves the production of telescopes.

d.   The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) Price competition in the sale of telescopes has been

restrained, suppressed, and/or eliminated in the State of California; (2) Prices for telescopes sold by the defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased telescopes directly or indirectly from the defendants and their co-conspirators have been deprived of the benefit of free and open competition.

e.   As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for telescopes than they otherwise would have paid in the absence of the defendants' unlawful conduct. As a result of the defendants' violation of Section 16720 of the California Business and Professions Code, plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

197.   The defendants have entered into an unlawful agreement in restraint of trade in violation of Conn. Gen. Stat. § 35-26.

a.   Connecticut's legislature conferred broad standing under the Connecticut Antitrust Act based on an important principle of protecting the public from anticompetitive behavior and of promoting competition in the marketplace.

b.   Under the Connecticut Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. Conn. Gen. Stat. § 35-46a.

c.   Every contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful. Conn. Gen. Stat. § 35-26.

d.   Every contract, combination, or conspiracy that has the purpose of effect of fixing, controlling, or maintaining prices in any part of trade or commerce; or of fixing, controlling, maintaining, limiting, or discontinuing the production,

1    manufacture, sale, or supply of any part of trade or commerce, is also unlawful.

2    Conn. Gen. Stat. § 35-28.

3    e.   Defendants made contracts or engaged in a combination or conspiracy with

4         each other by maintaining, limiting, or discontinuing the production,

5         manufacture, sale, or supply of telescopes for the purpose of, and which had

6         the desired effect of, fixing, controlling, or maintaining prices for telescopes

7         within the intrastate commerce of Connecticut.

8    f.   Plaintiffs purchased telescopes within the State of Connecticut during the Class

9         Period. But for defendants' conduct set forth herein, the price of telescopes

10        would have been lower, in an amount to be determined at trial.

11   g.   Plaintiffs and members of the Class were injured with respect to purchases of

12        telescopes in Connecticut and are entitled to all forms of relief, including actual

13        damages, treble damages, reasonable attorneys' fees and costs, and injunctive

14        relief.

15   h.   Sec. 35-44b. Judicial construction of Connecticut Antitrust Act. It is the intent

16        of the General Assembly that in construing sections 35-24 to 35-46, inclusive,

17        the courts of this state shall be guided by interpretations given by the federal

18        courts to federal antitrust statutes.

19   198.   The defendants have entered into an unlawful agreement in restraint of trade in

20   violation of the District of Columbia Code Annotated §§ 28-4501, et seq.

21        a.   The defendants' combination or conspiracy had the following effects: (1)

22             telescope price competition was restrained, suppressed, and eliminated

23             throughout the District of Columbia; (2) telescope prices were raised, fixed,

24             maintained and stabilized at artificially high levels throughout the District of

25             Columbia; (3) plaintiffs and members of the Damages Class were deprived of

26             free and open competition; and (4) plaintiffs and members of the Damages

27             Class paid supra-competitive, artificially inflated prices for telescopes.

28

b.   During the Class Period, the defendants' illegal conduct substantially affected District of Columbia commerce.

c.   As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.   By reason of the foregoing, the defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

199.   The defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740ILCS10/1, et seq.

a.   The Illinois Antitrust Act,740ILCS10/1, *et seq.*, aims to promote the unhampered growth of commerce and industry throughout the State by prohibiting restraints of trade which are secured through monopolistic or oligarchic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade . . . ." 740 ILCS 10/2.

b.   Plaintiffs purchased telescopes within the State of Illinois during the Class Period. But for defendants' conduct set forth herein, the price for telescopes would have been lower, in an amount to be determined at trial.

c.   Under the Illinois Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. 740 ILCS 10/7(2).

d.   Defendants made contracts or engaged in a combination or conspiracy with each other, though they would have been competitors but for their prior agreement, for the purpose of fixing, controlling, or maintaining prices for

telescopes sold, and/or for allocating products and customers within the intrastate commerce of Illinois.

  e. Defendants further unreasonably restrained trade or commerce and established, maintained or attempted to acquire monopoly power over the market for telescopes in Illinois for the purpose of excluding competition, in violation of 740 ILCS 10/1, *et seq.*

200. The defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, et seq.

  a. The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout Iowa; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

  b. During the Class Period, the defendants' illegal conduct substantially affected Iowa commerce.

  c. As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

  d. By reason of the foregoing, the defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

201. The defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, et seq.

  a. The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated

1               throughout Kansas; (2) telescope prices were raised, fixed, maintained and

2               stabilized at artificially high levels throughout Kansas; (3) plaintiffs and

3               members of the Damages Class were deprived of free and open competition;

4               and (4) plaintiffs and members of the Damages Class paid supracompetitive,

5               artificially inflated prices for telescopes.

6        b.    During the Class Period, the defendants' illegal conduct substantially affected

7               Kansas commerce.

8        c.    As a direct and proximate result of the defendants' unlawful conduct, plaintiffs

9               and members of the Damages Class have been injured in their business and

10              property and are threatened with further injury.

11        d.    By reason of the foregoing, the defendants have entered into agreements in

12              restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.*

13              Accordingly, plaintiffs and members of the Damages Class seek all forms of

14              relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

15    202.    The defendants have entered into an unlawful agreement in restraint of trade in

16 violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, et seq.

17        a.    The defendants' combination or conspiracy had the following effects: (1)

18              telescope price competition was restrained, suppressed, and eliminated

19              throughout Maine; (2) telescope prices were raised, fixed, maintained and

20              stabilized at artificially high levels throughout Maine; (3) plaintiffs and

21              members of the Damages Class were deprived of free and open competition;

22              and (4) plaintiffs and members of the Damages Class paid supra-competitive,

23              artificially inflated prices for telescopes.

24        b.    During the Class Period, the defendants' illegal conduct substantially affected

25              Maine commerce.

26        c.    As a direct and proximate result of the defendants' unlawful conduct, plaintiffs

27              and members of the Damages Class have been injured in their business and

28              property and are threatened with further injury.

d. By reason of the foregoing, the defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

203. The defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, et seq.

a. The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout Michigan; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

b. During the Class Period, the defendants' illegal conduct substantially affected Michigan commerce.

c. As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, the defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq*. Accordingly, plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

204. The defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, et seq.

a. The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) plaintiffs and

1        members of the Damages Class were deprived of free and open competition;

2        and (4) plaintiffs and members of the Damages Class paid supracompetitive,

3        artificially inflated prices for telescopes.

4        b.   During the Class Period, the defendants' illegal conduct substantially affected

5        Minnesota commerce.

6        c.   As a direct and proximate result of the defendants' unlawful conduct, plaintiffs

7        and members of the Damages Class have been injured in their business and

8        property and are threatened with further injury.

9        d.   By reason of the foregoing, the defendants have entered into agreements in

10       restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.*

11       Accordingly, plaintiffs and members of the Damages Class seek all relief

12       available under Minnesota Stat. §§ 325D.49, *et seq.*

13   205.   The defendants have entered into an unlawful agreement in restraint of trade in

14   violation of the Mississippi Code Annotated §§ 75-21-1, et seq.

15       a.   The defendants' combination or conspiracy had the following effects: (1)

16       telescope price competition was restrained, suppressed, and eliminated

17       throughout Mississippi; (2) telescope prices were raised, fixed, maintained and

18       stabilized at artificially high levels throughout Mississippi; (3) plaintiffs and

19       members of the Damages Class were deprived of free and open competition;

20       and (4) plaintiffs and members of the Damages Class paid supracompetitive,

21       artificially inflated prices for telescopes.

22       b.   During the Class Period, the defendants' illegal conduct substantially affected

23       Mississippi commerce.

24       c.   As a direct and proximate result of the defendants' unlawful conduct, plaintiffs

25       and members of the Damages Class have been injured in their business and

26       property and are threatened with further injury.

27       d.   By reason of the foregoing, the defendants have entered into agreements in

28       restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.*

COMPLAINT

1  Accordingly, plaintiffs and members of the Damages Class seek all relief

2  available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

3  206.  The defendants have entered into an unlawful agreement in restraint of trade in

4  violation of the Nebraska Revised Statutes §§ 59-801, et seq.

5  a.  The defendants' combination or conspiracy had the following effects: (1)

6  telescope price competition was restrained, suppressed, and eliminated

7  throughout Nebraska; (2) telescope prices were raised, fixed, maintained and

8  stabilized at artificially high levels throughout Nebraska; (3) plaintiffs and

9  members of the Damages Class were deprived of free and open competition;

10  and (4) plaintiffs and members of the Damages Class paid supra-competitive,

11  artificially inflated prices for telescopes.

12  b.  During the Class Period, the defendants' illegal conduct substantially affected

13  Nebraska commerce.

14  c.  As a direct and proximate result of the defendants' unlawful conduct, plaintiffs

15  and members of the Damages Class have been injured in their business and

16  property and are threatened with further injury.

17  d.  By reason of the foregoing, the defendants have entered into agreements in

18  restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.*

19  Accordingly, plaintiffs and members of the Damages Class seek all relief

20  available under Nebraska Revised Statutes §§ 59-801, *et seq.*

21  207.  The defendants have entered into an unlawful agreement in restraint of trade in

22  violation of the Nevada Revised Statutes Annotated §§ 598A.010, et seq.

23  a.  The defendants' combination or conspiracy had the following effects: (1)

24  telescope price competition was restrained, suppressed, and eliminated

25  throughout Nevada; (2) telescope prices were raised, fixed, maintained and

26  stabilized at artificially high levels throughout Nevada; (3) plaintiffs and

27  members of the Damages Class were deprived of free and open competition;

28

and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

b.  During the Class Period, the defendants' illegal conduct substantially affected Nevada commerce.

c.  As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, the defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

208.  The defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, et seq.

a.  The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

b.  During the Class Period, the defendants' illegal conduct substantially affected New Hampshire commerce.

c.  As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, the defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et*

*seq.* Accordingly, plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

209.   The defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, et seq.

    a.   The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

    b.   During the Class Period, the defendants' illegal conduct substantially affected New Mexico commerce.

    c.   As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d.   By reason of the foregoing, the defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

210.   The defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, et seq.

    a.   The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout New York; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive,

1                              artificially inflated prices for telescopes when they purchased telescopes, or

2                              purchased products that were otherwise of lower quality than they would have

3                              been absent the defendants' and their co-conspirators' illegal acts, or were

4                              unable to purchase products that they otherwise would have purchased absent

5                              the illegal conduct.

6              b.     During the Class Period, the defendants' illegal conduct substantially affected

7                              New York commerce.

8              c.     As a direct and proximate result of the defendants' unlawful conduct, plaintiffs

9                              and members of the Damages Class have been injured in their business and

10                            property and are threatened with further injury.

11              d.     By reason of the foregoing, the defendants have entered into agreements in

12                              restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.*

13                              The conduct set forth above is a *per se* violation of the Act. Accordingly,

14                              plaintiffs and members of the Damages Class seek all relief available under

15                              New York Gen. Bus. Law §§ 340, *et seq.*

16        211.     The defendants have entered into an unlawful agreement in restraint of trade in

17 violation of the North Carolina General Statutes §§ 75-1, et seq.

18              a.     The defendants' combination or conspiracy had the following effects: (1)

19                              telescope price competition was restrained, suppressed, and eliminated

20                              throughout North Carolina; (2) telescope prices were raised, fixed, maintained

21                              and stabilized at artificially high levels throughout North Carolina; (3)

22                              plaintiffs and members of the Damages Class were deprived of free and open

23                              competition; and (4) plaintiffs and members of the Damages Class paid supra-

24                              competitive, artificially inflated prices for telescopes.

25              b.     During the Class Period, the defendants' illegal conduct substantially affected

26                            North Carolina commerce.

27

28

COMPLAINT

c.    As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, the defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq.*

212.    The defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, et seq.

a.    The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

b.    During the Class Period, the defendants' illegal conduct had a substantial effect on North Dakota commerce.

c.    As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, the defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

213.    The defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, et seq.

a. The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout Oregon; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

b. During the Class Period, the defendants' illegal conduct had a substantial effect on Oregon commerce.

c. As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, the defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*. Accordingly, plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

214. The defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, et seq.

a. The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

b. During the Class Period, the defendants' illegal conduct had a substantial effect on South Dakota commerce.

1        c.    As a direct and proximate result of the defendants' unlawful conduct, plaintiffs

2            and members of the Damages Class have been injured in their business and

3            property and are threatened with further injury.

4        d.    By reason of the foregoing, the defendants have entered into agreements in

5            restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et*

6            *seq*. Accordingly, plaintiffs and members of the Damages Class seek all relief

7            available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

8      215.    The defendants have entered into an unlawful agreement in restraint of trade in

9  violation of the Tennessee Code Annotated §§ 47-25-101, et seq.

10        a.    The defendants' combination or conspiracy had the following effects: (1)

11            telescope price competition was restrained, suppressed, and eliminated

12            throughout Tennessee; (2) telescope prices were raised, fixed, maintained and

13            stabilized at artificially high levels throughout Tennessee; (3) plaintiffs and

14            members of the Damages Class were deprived of free and open competition;

15            and (4) plaintiffs and members of the Damages Class paid supra-competitive,

16            artificially inflated prices for telescopes.

17        b.    During the Class Period, the defendants' illegal conduct had a substantial effect

18            on Tennessee commerce.

19        c.    As a direct and proximate result of the defendants' unlawful conduct, plaintiffs

20            and members of the Damages Class have been injured in their business and

21            property and are threatened with further injury.

22        d.    By reason of the foregoing, the defendants have entered into agreements in

23            restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*.

24            Accordingly, plaintiffs and members of the Damages Class seek all relief

25            available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

26      216.    The defendants have entered into an unlawful agreement in restraint of trade in

27  violation of the Utah Code Annotated §§ 76-10-3101, et seq.

28

COMPLAINT

a.  The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout Utah; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

b.  During the Class Period, the defendants' illegal conduct had a substantial effect on Utah commerce.

c.  As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, the defendants' have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq.* Accordingly, plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq.*

217.  The defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, et seq.

a.  The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout Vermont; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

b.  During the Class Period, the defendants' illegal conduct had a substantial effect on Vermont commerce.

1         c.    As a direct and proximate result of the defendants' unlawful conduct, plaintiffs

2              and members of the Damages Class have been injured in their business and

3              property and are threatened with further injury.

4         d.    By reason of the foregoing, the defendants have entered into agreements in

5              restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.*

6              Accordingly, plaintiffs and members of the Damages Class seek all relief

7              available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

8      218.    The defendants have entered into an unlawful agreement in restraint of trade in

9  violation of the West Virginia Code §§ 47-18-1, et seq.

10         a.    The defendants' combination or conspiracy had the following effects: (1)

11              telescope price competition was restrained, suppressed, and eliminated

12              throughout West Virginia; (2) telescope prices were raised, fixed, maintained

13              and stabilized at artificially high levels throughout West Virginia; (3) plaintiffs

14              and members of the Damages Class were deprived of free and open

15              competition; and (4) plaintiffs and members of the Damages Class paid supra-

16              competitive, artificially inflated prices for telescopes.

17         b.    During the Class Period, the defendants' illegal conduct had a substantial effect

18              on West Virginia commerce.

19         c.    As a direct and proximate result of the defendants' unlawful conduct, plaintiffs

20              and members of the Damages Class have been injured in their business and

21              property and are threatened with further injury.

22         d.    By reason of the foregoing, the defendants have entered into agreements in

23              restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.*

24              Accordingly, plaintiffs and members of the Damages Class seek all relief

25              available under West Virginia Code §§ 47-18-1, *et seq.*

26      219.    The defendants have entered into an unlawful agreement in restraint of trade in

27  violation of the Wisconsin Statutes §§ 133.01, et seq.

28

COMPLAINT

a.   The defendants' combination or conspiracy had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) telescope prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

b.   During the Class Period, the defendants' illegal conduct had a substantial effect on Wisconsin commerce.

c.   As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.   By reason of the foregoing, the defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq*. Accordingly, plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

220.   Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of the defendants' unlawful combination, contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid more for telescopes than they otherwise would have paid in the absence of the defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes the defendants' conduct unlawful.

221.   In addition, the defendants have profited significantly from the aforesaid conspiracy. The defendants' profits derived from its anticompetitive conduct come at the expense and detriment of the plaintiffs and the members of the Damages Class.

222.   Accordingly, plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or

otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

## SIXTH CLAIM FOR RELIEF

**Violation of State Consumer Protection Laws**
**(on behalf of Plaintiffs and the Damages Class or, In the Alternative, on Behalf of the State Damages Classes)**

223.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

224.    The defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below.

225.    The defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, et seq.

    a.    The defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at noncompetitive and artificially inflated levels, the prices at which telescopes were sold, distributed, or obtained in Arkansas and took efforts to conceal its agreements from plaintiffs and members of the Damages Class.

    b.    The aforementioned conduct on the part of the defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

    c.    The defendants' unlawful conduct had the following effects: (1) telescope Products price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) telescope Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

    d.    During the Class Period, the defendants' illegal conduct substantially affected Arkansas commerce and consumers.

e.   As a direct and proximate result of the unlawful conduct of the defendants, plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

f.   The defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, plaintiffs and the members of the Damages Class seek all relief available under that statute.

226.   The defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, et seq.

a.   During the Class Period, the defendants marketed, sold, or distributed telescopes in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

b.   This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from the defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

c.   The defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of the defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

d.    The defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

e.    The defendants' acts or practices are unfair to purchasers of telescopes in the State of California within the meaning of Section 17200, California Business and Professions Code;

f.    The defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

g.    Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by the defendants as a result of such business acts or practices.

h.    The illegal conduct alleged herein is continuing and there is no indication that the defendants will not continue such activity into the future.

i.    The unlawful and unfair business practices of the defendants have caused and continue to cause plaintiffs and the members of the Damages Class to pay supra-competitive and artificially-inflated prices for telescopes. Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

j.    The conduct of the defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

k.    As alleged in this Complaint, the defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by the defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that

may have been obtained by the defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

227.    The defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, et seq.

a.    The defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which telescopes were sold, distributed or obtained in the District of Columbia.

b.    The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiffs were not aware of the defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by the defendants for telescopes. The defendants had the sole power to set that price and plaintiffs had no power to negotiate a lower price. Moreover, plaintiffs lacked any meaningful choice in purchasing telescopes because they were unaware of the unlawful overcharge and there was no alternative source of supply through which plaintiffs could avoid the overcharges. The defendants' conduct with regard to sales of telescopes, including its illegal conspiracy to secretly fix the price of telescopes at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited the defendants at the expense of plaintiffs and the public. The defendants took grossly unfair advantage of plaintiffs. The suppression of competition that has resulted from the defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for telescopes.

c.   The defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) plaintiffs and the Damages Class were deprived of free and open competition; and (4) plaintiffs and the Damages Class paid supra-competitive, artificially inflated prices for telescope.

d.   As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured and are threatened with further injury. The defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, plaintiffs and members of the Damages Class seek all relief available under that statute.

228.   The defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq.

a.   The defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout Florida; (2) telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

b.   During the Class Period, the defendants' illegal conduct substantially affected Florida commerce and consumers.

c.   As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

d. The defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, plaintiffs and members of the Damages Class seek all relief available under that statute.

229. The defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, et seq.

a. The defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

b. During the Class Period, the defendants' illegal conduct substantially affected Hawaii commerce and consumers.

c. As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

d. The defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, plaintiffs and members of the Damages Class seek all relief available under that statute.

230. The defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

a. The defendants were engaged in trade or commerce as defined by G.L. c. 93A.

b. The defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which

telescopes were sold, distributed, or obtained in Massachusetts and took efforts to conceal its agreements from plaintiffs and members of the Damages Class.

c.   The defendants' unlawful conduct had the following effects: (1) telescopes price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) telescopes prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

d.   As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class were injured and are threatened with further injury.

e.   The defendants have been or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendants not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth. More than thirty days has passed since such demand letters were served, and each of the defendants served has failed to make a reasonable settlement offer.

f.   By reason of the foregoing, the defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. The defendants and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling plaintiffs and members of the Damages Class to multiple damages.

231.   The defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, et. seq.

a.   Plaintiffs and the Damages Class purchased telescopes for personal, family, or household purposes.

b.   The defendants engaged in the conduct described herein in connection with the sale of telescopes in trade or commerce in a market that includes Missouri.

c.   The defendants agreed to, and did in fact, affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which telescopes were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to plaintiffs and members of the Damages Class.

d.   The defendants concealed, suppressed, and omitted to disclose material facts to plaintiffs and members of the Damages Class concerning its unlawful activities and artificially inflated prices for telescopes. It concealed, suppressed, and omitted facts that would have been important to plaintiffs and members of the Damages Class as they related to the cost of telescopes they purchased.

e.   The defendants misrepresented the real cause of price increases and/or the absence of price reductions in telescopes by making public statements that were not in accord with the facts.

f.   The defendants' statements and conduct concerning the price of telescopes were deceptive as they had the tendency or capacity to mislead plaintiffs and members of the Damages Class to believe that they were purchasing telescopes at prices established by a free and fair market.

g.   The defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout Missouri; (2) telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and

1   members of the Damages Class paid supra-competitive, artificially inflated

2   prices for telescopes.

3   h.   The foregoing acts and practices constituted unlawful practices in violation of

4   the Missouri Merchandising Practices Act.

5   i.   As a direct and proximate result of the above-described unlawful practices,

6   plaintiffs and members of the Damages Class suffered ascertainable loss of

7   money or property.

8   j.   Accordingly, plaintiffs and members of the Damages Class seek all relief

9   available under Missouri's Merchandising Practices Act, specifically Mo. Rev.

10   Stat. § 407.020, which prohibits "the act, use or employment by any person of

11   any deception, fraud, false pretense, false promise, misrepresentation, unfair

12   practice or the concealment, suppression, or omission of any material fact in

13   connection with the sale or advertisement of any merchandise in trade or

14   commerce…," as further interpreted by the Missouri Code of State

15   Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR

16   60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief

17   sought in this count.

18   232.   The defendants have engaged in unfair competition or unfair, unconscionable, or

19   deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont.

20   Code, §§ 30-14-101, et seq.

21   a.   The defendants' unlawful conduct had the following effects: (1) telescope price

22   competition was restrained, suppressed, and eliminated throughout Montana;

23   (2) telescope prices were raised, fixed, maintained, and stabilized at artificially

24   high levels throughout Montana; (3) plaintiffs and members of the Damages

25   Class were deprived of free and open competition; and (4) plaintiffs and

26   members of the Damages Class paid supra-competitive, artificially inflated

27   prices for telescopes.

28

b.　During the Class Period, the defendants' illegal conduct substantially affected Montana commerce and consumers.

c.　As a direct and proximate result of the defendants' unlawful conduct, plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

d.　The defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq*., and, accordingly, plaintiffs and members of the Damages Class seek all relief available under that statute.

233.　The defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, et seq.

a.　The defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which telescopes were sold, distributed or obtained in New Mexico and took efforts to conceal its agreements from plaintiffs and members of the Damages Class.

b.　The aforementioned conduct on the part of the defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by plaintiffs and the members of the Damages Class and the prices paid by them for telescopes as set forth in N.M.S.A., § 57-12-2E. Plaintiffs were not aware of the defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by the defendants for telescopes. The defendants had the sole power to set that price and plaintiffs had no power to negotiate a lower price. Moreover, plaintiffs lacked any meaningful choice in purchasing telescopes because they were unaware of the unlawful overcharge and there was no

alternative source of supply through which plaintiffs' could avoid the overcharges. the defendants' conduct with regard to sales of telescopes, including its illegal conspiracy to secretly fix the price of telescopes at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited the defendants at the expense of plaintiffs and the public. the defendants took grossly unfair advantage of plaintiffs. The suppression of competition that has resulted from the defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for telescopes.

c.    The defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) telescope prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

d.    During the Class Period, the defendants' illegal conduct substantially affected New Mexico commerce and consumers.

e.    As a direct and proximate result of the unlawful conduct of the defendants, plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

f.    The defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, plaintiffs and the members of the Damages Class seek all relief available under that statute.

234.    The defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, et seq.

a. The defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which telescopes were sold, distributed or obtained in New York and took efforts to conceal its agreements from plaintiffs and members of the Damages Class.

b. The defendants and their co-conspirators made public statements about the prices of telescopes and products containing telescopes that the defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for telescopes and products containing telescopes; and the defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

c. Because of the defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased telescopes were misled to believe that they were paying a fair price for telescopes or the price increases for telescopes were for valid business reasons; and similarly situated consumers were potentially affected by the defendants' conspiracy.

d. The defendants knew that its unlawful trade practices with respect to pricing telescopes would have an impact on New York consumers and not just the defendants' direct customers.

e. The defendants knew that their unlawful trade practices with respect to pricing telescopes would have a broad impact, causing consumer class members who indirectly purchased telescopes to be injured by paying more for telescopes than they would have paid in the absence of the defendants' unlawful trade acts and practices.

f. The conduct of the defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349,

1   which resulted in consumer injury and broad adverse impact on the public at

2   large, and harmed the public interest of New York State in an honest

3   marketplace in which economic activity is conducted in a competitive manner.

4       g.    The defendants' unlawful conduct had the following effects: (1) telescope price

5   competition was restrained, suppressed, and eliminated throughout New York;

6   (2) telescope prices were raised, fixed, maintained, and stabilized at artificially

7   high levels throughout New York; (3) plaintiffs and members of the Damages

8   Class were deprived of free and open competition; and (4) plaintiffs and

9   members of the Damages Class paid supra-competitive, artificially inflated

10   prices for telescopes.

11       h.    During the Class Period, the defendants marketed, sold, or distributed

12   telescopes in New York, and the defendants' illegal conduct substantially

13   affected New York commerce and consumers.

14       i.    During the Class Period, each of the defendants named herein, directly, or

15   indirectly and through affiliates they dominated and controlled, manufactured,

16   sold and/or distributed telescopes in New York.

17       j.    Plaintiffs and members of the Damages Class seek all relief available pursuant

18   to N.Y. Gen. Bus. Law § 349 (h).

19       235.    The defendants have engaged in unfair competition or unfair, unconscionable, or

20   deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, et seq.

21       a.    The defendants agreed to, and did in fact, act in restraint of trade or commerce

22   by affecting, fixing, controlling and/or maintaining, at artificial and non-

23   competitive levels, the prices at which telescopes were sold, distributed or

24   obtained in North Carolina and took efforts to conceal its agreements from

25   plaintiffs and members of the Damages Class.

26       b.    The defendants' price-fixing conspiracy could not have succeeded absent

27   deceptive conduct by the defendants to cover up its illegal acts. Secrecy was

28   integral to the formation, implementation and maintenance of the defendants'

1    price-fixing conspiracy. The defendants committed inherently deceptive and

2    self-concealing actions, of which plaintiffs could not possibly have been aware.

3    The defendants and their co-conspirators publicly provided pre-textual and

4    false justifications regarding their price increases. The defendants' public

5    statements concerning the price of telescopes created the illusion of

6    competitive pricing controlled by market forces rather than supra-competitive

7    pricing driven by the defendants' illegal conspiracy. Moreover, the defendants

8    deceptively concealed its unlawful activities by mutually agreeing not to

9    divulge the existence of the conspiracy to outsiders, conducting meetings and

10   conversations in secret, confining the plan to a small group of higher-level

11   officials at each company and avoiding the creation of documents which would

12   reveal the antitrust violations.

13   c.   The conduct of the defendants described herein constitutes consumer-oriented

14   deceptive acts or practices within the meaning of North Carolina law, which

15   resulted in consumer injury and broad adverse impact on the public at large,

16   and harmed the public interest of North Carolina consumers in an honest

17   marketplace in which economic activity is conducted in a competitive manner.

18   d.   The defendants' unlawful conduct had the following effects: (1) telescope price

19   competition was restrained, suppressed, and eliminated throughout North

20   Carolina; (2) telescope prices were raised, fixed, maintained, and stabilized at

21   artificially high levels throughout North Carolina; (3) plaintiffs and members

22   of the Damages Class were deprived of free and open competition; and (4)

23   plaintiffs and members of the Damages Class paid supra-competitive,

24   artificially inflated prices for telescopes.

25   e.   During the Class Period, the defendants marketed, sold, or distributed

26   telescopes in North Carolina, and the defendants' illegal conduct substantially

27   affected North Carolina commerce and consumers.

28

f. During the Class Period, the defendants, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed telescopes in North Carolina.

g. Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. The defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, plaintiffs and members of the Damages Class seek all relief available under that statute.

236. The defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, et seq.

a. Members of this Damages Class purchased telescopes for personal, family, or household purposes.

b. The defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which telescopes were sold, distributed, or obtained in Rhode Island.

c. The defendants deliberately failed to disclose material facts to plaintiffs and members of the Damages Class concerning its unlawful activities and artificially inflated prices for telescopes. The defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, it breached that duty by its silence. The defendants misrepresented to all consumers during the Class Period that its telescope prices were competitive and fair.

d. The defendants' unlawful conduct had the following effects: (1) telescope price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) telescope prices were raised, fixed, maintained, and stabilized at

artificially high levels throughout Rhode Island; (3) plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for telescopes.

e.  As a direct and proximate result of the defendants' violations of law, plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of the defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the defendants' willful and deceptive conduct, as described herein.

f.  The defendants' deception, including its affirmative misrepresentations and omissions concerning the price of telescopes, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing telescopes at prices set by a free and fair market. The defendants' affirmative misrepresentations and omissions constitute information important to plaintiffs and members of the Damages Class as they related to the cost of telescopes they purchased. The defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, plaintiffs and members of the Damages Class seek all relief available under that statute.

237.  The defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, et seq.

a.  The defendants' combination or conspiracy had the following effects: (1) telescopes price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) telescopes prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) plaintiffs and members of the Damages Class were deprived of free and

1       open competition; and (4) plaintiffs and members of the Damages Class paid

2       supra-competitive, artificially inflated prices for telescopes.

3       b.   During the Class Period, the defendants' illegal conduct had a substantial effect

4            on South Carolina commerce.

5       c.   As a direct and proximate result of the defendants' unlawful conduct, plaintiffs

6            and members of the Damages Class have been injured in their business and

7            property and are threatened with further injury.

8       d.   The defendants have engaged in unfair competition or unfair or deceptive acts

9            or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and,

10           accordingly, plaintiffs and the members of the Damages Class seek all relief

11           available under that statute.

12      238.   The defendants have engaged in unfair competition or unfair, unconscionable, or

13  deceptive acts or practices in violation of 9 Vermont § 2451, et seq.

14      a.   The defendants agreed to, and did in fact, act in restraint of trade or commerce

15           in a market that includes Vermont by affecting, fixing, controlling, and/or

16           maintaining, at artificial and non-competitive levels, the prices at which

17           telescopes were sold, distributed, or obtained in Vermont.

18      b.   The defendants deliberately failed to disclose material facts to plaintiffs and

19           members of the Damages Class concerning its unlawful activities and

20           artificially inflated prices for telescopes. The defendants owed a duty to

21           disclose such facts, and considering the relative lack of sophistication of the

22           average, non-business consumer, The defendants breached that duty by its

23           silence. The defendants misrepresented to all consumers during the Class

24           Period that its telescope prices were competitive and fair.

25      c.   The defendants' unlawful conduct had the following effects: (1) telescope price

26           competition was restrained, suppressed, and eliminated throughout Vermont;

27           (2) telescope prices were raised, fixed, maintained, and stabilized at artificially

28           high levels throughout Vermont; (3) plaintiffs and members of the Damages

1   Class were deprived of free and open competition; and (4) plaintiffs and

2   members of the Damages Class paid supra-competitive, artificially inflated

3   prices for telescopes.

4   d.   As a direct and proximate result of the defendants' violations of law, plaintiffs

5   and members of the Damages Class suffered an ascertainable loss of money or

6   property as a result of the defendants' use or employment of unconscionable

7   and deceptive commercial practices as set forth above. That loss was caused by

8   the defendants' willful and deceptive conduct, as described herein.

9   e.   The defendants' deception, including its affirmative misrepresentations and

10   omissions concerning the prices of telescopes, likely misled all purchasers

11   acting reasonably under the circumstances to believe that they were purchasing

12   telescopes at prices set by a free and fair market. The defendants' misleading

13   conduct and unconscionable activities constitutes unfair competition or unfair

14   or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and,

15   accordingly, plaintiffs and members of the Damages Class seek all relief

16   available under that statute.

17   **SEVENTH CLAIM FOR RELIEF**

18   **Unjust Enrichment**
19   **(on behalf of Plaintiffs and the Damages Class or, In the Alternative, on Behalf of the State**
20   **Damages Classes)**

21   239.   Plaintiffs repeat and reallege the allegations of the Paragraphs above as if fully set

22   forth herein.

23   240.   As a result of their unlawful conduct, the defendants have and will continue to be

24   unjustly enriched. defendants have been unjustly enriched by the receipt of, at a minimum,

25   unlawfully inflated prices and unlawful profits on telescope sales.

26   241.   Plaintiffs bring this claim under the laws of each of the Indirect Purchaser States.

27

28

242. defendants have benefited from their unlawful acts and it would be inequitable for them to be allowed to retain any of the ill-gotten gains resulting from the overpayments made for telescopes by plaintiffs and the Damages Class members.

243. Plaintiffs and the members of the Damages Class are entitled to the amount of the defendants' ill-gotten gains resulting from its unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which plaintiffs and the Damages Class members may make claims on a pro rata basis.

244. Pursuit of any remedies against the companies from which plaintiffs and the Damages Class members purchased telescopes subject to the defendants' conspiracy would have been futile.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray for judgment as follows:

1. Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. Determining the unlawful conduct alleged herein to be:

    a. a *per se* violation of Section 1 of the Sherman Act;

    b. an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

    c. in violation of the state antitrust and consumer protection laws; and

    d. acts of unjust enrichment by the defendants.

3. Awarding plaintiffs and the Damages Class damages, to the maximum extent allowed, and that a joint and several judgment in favor of plaintiffs and Damages Class members be entered against the defendants in an amount to be trebled as permitted;

4. Awarding plaintiffs and the Damages Class restitution, disgorgement, and any other relief permitted by law or equity pursuant to the claims alleged herein;

5. Enjoining and restraining the defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons

acting or claiming to act on their behalf or in concert with them, from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect.

6.    Awarding plaintiffs and the members of the Classes pre- and post-judgment interest as provided by law, as well as costs, including reasonable attorneys' fees;

7.    Awarding plaintiffs and members of the Classes any other further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand a trial by jury as to all issues so triable.


Dated:  July 17, 2020                              Respectfully submitted,

MARC M. SELTZER
STEVEN SKLAVER
KALPANA SRINIVASAN
MICHAEL GERVAIS

SUSMAN GODFREY L.L.P.


By: */s/ Kalpana Srinivasan*
Kalpana Srinivasan

*Attorneys for Plaintiffs*

COMPLAINT